D. A. HINKLE v. THE RICHMOND AND DANVILLE RAILROAD COMPANY.

*Negligence—Common Carriers — Railroads — Highways and Public Crossings—Province of Jury.*

1. It is negligence if the engineer of a moving train omits to give, in reasonable time, some signal on approaching a crossing of a public highway, or a point where the public have been habitually permitted to cross a railway track, when such crossing may be hidden from the view of travelers, by cars or other obstructions allowed by the company to remain on its track, or by embankments, cuts or sharp curves on its lines.

2. Where a railway company erected a whistle-post at a proper distance from a crossing to give warning of the approach of its trains, and it appeared the public were accustomed to act on the supposition that a signal would be given at that point: *Held,* to be negligence on the part of the company if its engineer failed to give such proper signal on the arrival of the train at that place.

3. Where the injured person would not have gone on the crossing but for the negligence of the engineer in failing to give the proper signal, a railway company will be liable for the damages resulting from a collision, although the party injured may have been careless in exposing himself.

4. It is the duty of a person going upon a crossing of a railroad to look and listen for the approach of trains, though that may not be the time a regular train is due at that point, but he is only bound to *look* when to do so would aid him in ascertaining the approach of a train; under other circumstances he has a right to rely upon his sense of hearing.

5. If one, after the proper signals have been given, ventures upon the track he does so at his own risk, unless the railroad company is guilty of some negligence to which any resulting injury can be directly imputed.

6. It is the province of the jury, where there is conflicting evidence, to determine whether the injured person did look and listen for the approach of a train before attempting to cross a railroad; and whether an engineer, keeping a proper lookout, could have stopped his train or so slackened its speed as to diminish the dangers of a collision.

7. A road used as a mill-road may, because of its location, be also such a "plantation road" as will impose upon a railroad company the burden of keeping it in repair under section 1975 of *The Code.*

This was a CIVIL ACTION, tried at Fall Term, 1891, of the Superior Court of DAVIDSON County, before *Armfield, J.* The facts are stated in the opinion.

*Mr. C. B. Watson*, for plaintiff.
*Messrs. D. Schenck* and *G. F. Bason*, for defendant.

AVERY, J.: In the absence of statutes regulating the time and manner of giving signals, the failure of an engineer in charge of a locomotive to ring the bell or sound the whistle on approaching the crossing of a public highway, or a point where the public have been habitually permitted to cross, as at the intersection of a mill-road or a farm-road frequently used, is evidence of negligence to be submitted to the jury. 2 Sherman and Red. on Neg., §§ 463 and 464, *Womer* v. *N. Y. R. R. Co.*, 44 N. Y., 465; *Troy* v. *Railroad*, 99 N. C., 298; 2 Wood R. L., p. 1292; *Bary* v. *Railroad*, 92 N. Y., 289.

It is negligence *per se*, because of the peril both to passengers on trains and people using highways, to omit to give in reasonable time some signal from a train moving, whether at the rate of twenty or forty miles an hour, when it is hidden from the view of travelers, who may be approaching and in danger of coming in collision with it, by the cars of the company left standing on its track, or by an embankment, a cut or a sharp curve in its line, or by any other obstruction allowed to be placed or placed in any way by the company. *Randall* v. *Railroad*, 104 N. C., 416; 2 Woods R. L., p. 1313, and note 3; *Railroad* v. *Goetz*, 79 Ky., 442; *Penn. Co.* v. *Krick*, 47 Ind., 368; *Strong* v. *Railroad Company*, 61 Cal., 326; *Kenney* v. *Railroad*, 105 Miss., 270.

Where a railroad company has erected a whistle-post at a proper distance from a crossing in order to notify engineers when to give timely warning of the approach of a train to persons using the intersecting highway, and the purpose of the company is known to the public so that persons gen-

erally are led to act on the supposition that a signal will be given at the post, it is negligence on the part of the company if the engineer fail to sound the whistle at the point so indicated in passing with a freight or passenger train in his charge. 2 Woods R. L., p. 1313; *Spencer* v. *Railroad*, 29 Iowa, 55; *Surrey* v. *Railroad*, 10 Allen (Mass.), 368; *Newsom* v. *Railroad*, 29 N. Y., 383.

Where a jury find that the injured person would not have ventured upon the track at such a crossing, and would have incurred no risk of a collision with the train, but for the negligence of the engineer in failing to give timely warning of its approach, the corporation is liable to answer in damages, though the plaintiff may have been careless in exposing himself to danger. *Deans* v. *Railroad*, 107 N. C., 686, and cases cited.

In *Randall* v. *Railroad*, *supra*, the Judge who tried the case below charged the jury, in effect, that if the engineer failed, in passing around a sharp curve, caused by a projecting cliff or mountain, to give the usual signal of approach to a crossing just beyond the curve, from which his train was not visible, the corporation was liable for injury to a team of oxen that were being driven along a parallel road beside the track and near said crossing, if, as the testimony tended to show, the owner would have driven them to a point more remote from the railroad, and where they would have been free from danger, had he heard the expected warning at the usual place. There was a conflict of testimony in that as in our case. The engineer testified that he blew at the usual point for the crossing, not far from the place where the animals were killed, while other witnesses contradicted this statement. Kinney, the engineer in the case at bar, testified that he blew at a post erected below Linwood Station, which he located 342½ yards south of that depot; that he passed the station going north without stopping, and blew again at the proper point to warn persons passing over the crossing of the

Lexington road, which is 231 yards north of Linwood, but that he gave no other warning after passing that signal-post till he struck the horse attached to the covered wagon in which the plaintiff and his father were riding, at the crossing of the mill-road, 652 yards north of the intersection with the Lexington road. It is admitted that there was a signal-post erected on the west side of the track, or on the left of the engineer, going north, at a distance of 208 yards south of the mill-road crossing and 444 yards north of the crossing of the Lexington road.

Three witnesses for the plaintiff testified positively that the engineer blew the whistle at a bridge about a half-mile south of Linwood, and far south of the first whistle-post on his right, and did not blow again till the plaintiff was injured. Another witness, who lived in sixty or seventy yards of Linwood, stated that he did not hear any whistle after that given at the bridge.

Conceding, for the sake of the argument, that the signal-post on the left (208 yards from the mill-road crossing) was intended for trains moving south, and that the custom was to blow opposite to it to give notice of the approach of trains moving south to travelers on the Lexington road, we think that the Judge below was not in error in telling the jury that a traveler had the right to rely on hearing the usual signal at posts known by the public to have been erected to indicate to engineers the point for blowing the whistle as a warning of the approach of a train. According to the testimony offered for the plaintiff, the engineer failed to blow at the lower post (where he admits he ought to have given a signal, and says that he did), or below the Lexington road crossing, while the engineer testifies to the contrary. In *Randall* v. *Railroad, supra,* it was the station-blow that the jury found the engineer had failed to give, and plaintiff was near, not at, a crossing, and about 100 yards from the station, when his oxen jumped upon the track and were killed; yet if he

had heard the usual station-blow at the point where he had a right to expect it, he would have moved his cattle out of danger, and thereby avoided the accident.

But counsel pressed with much earnestness and ingenuity, the more sweeping and general exception, growing out of the tenth paragraph of his prayer for instructions, that there was no evidence of negligence on the part of defendant company. Not only was the Court justified by the testimony tending to show the failure to sound the whistle at the lower post, in refusing to give this instructien, but the jury should have been left to determine (looking at every aspect of the testimony and the inferences to be drawn from it) whether the engineer blew the whistle before reaching the Lexington road, and whether his admitted failure, at the proper distance from the mill-road crossing, to repeat the warning, was the proximate cause of the injury ; for if, by giving a signal at either place where defendant had a right to expect it, the accident would have been avoided, then such omission was the immediate cause of the injury, and the plaintiff was entitled to recover, though he may have shown a want of care in going upon the track. *Lay* v. *Railroad*, 106 N. C., 404 ; *Deans* v. *Railroad, supra.* In passing upon these questions, the jury could have considered, and doubtless did, the contention on the one hand that the train was moving along a deep cut, up-grade, and could not have been seen by the plaintiff, who had been stationed by his father on the shafts of the covered wagon, until the wagon was driven upon the track, and on the other, that the train must have been distinctly visible to one looking out from the front of the wagon for forty yards before they drove upon the crossing.

The jury found, in response to the first issue, that the plaintiff was injured by the negligence of the defendant company, and in answer to the second issue, that the plaintiff did not contribute to cause the injuries by his own negligence.

It was the duty of the plaintiff to look and listen before going upon the track, although it may not have been the hour when a regular train was expected. *Randall* v. *Railroad, supra.* "He is only bound to look, when to do so would aid him in determining whether a train is approaching. In all other respects he *has a right to rely upon his ears. But when the proper signals are given,* if a traveler ventures upon the track, and miscalculates as to the chances of crossing, the *risk is his, unless some negligence can be imputed to the company which has directly caused the injury.*" 2 Wood R. L., p. 1310, § 343, and note 2, (*Ibid*, p. 1312, and note 1.) *Kenney* v. *Railroad, supra.*

The Court instructed the jury upon this subject as follows: " It was the duty of the plaintiff to keep a proper lookout as well as the engineer, and one time looking and listening at a distance from the track is not a proper lookout. He ought to have used his senses of sight and hearing all the time, and if he failed to do so, and thereby caused his injury, the answer to the second issue should be ' Yes.'" If the Court had, in compliance with the defendant's request, told the jury that it was "the duty of the plaintiff to see and hear," and his failure to do so was equivalent to not looking or listening at all, the instruction would unquestionably have been erroneous, and subject to well grounded exception on the part of the plaintiff. It is manifest that the Court had no right, where there was conflicting testimony, and more than one inference deducible from the evidence, to instruct the jury that they must find, in any aspect of the case, that the plaintiff, by his own negligence, contributed to bringing about the collision, much less that the negligence of the plaintiff was the direct cause of the injury. The plaintiff testified that he and his father (who is his next friend as plaintiff) started from the house of his brother, the witness A. A. Hinkle, near the Lexington road, in a covered wagon, and, as they traveled along the road, he looked out of the

wagon two or three times to see if a train was coming, and that when they had gone down the hill, within about twenty yards of the crossing, he stopped the wagon and listened. The plaintiff then got out on the cross-pieces of the shaft and held to the wagon with one hand while he rested the other on the horse's rump, and, as his father drove on, looked and listened, but neither heard nor saw an approaching train till the horse got upon the track, when he had but time to utter an exclamation and fell back into the wagon with his father before they were stricken and carried or thrown about seventy-five feet and left in an insensible state by the train. It will be observed that the boy, if he is to be believed, looked and listened, and neither saw nor heard anything. The Judge had no right to tell the jury that because the engineer, however respectable or intelligent, testified to the height of the banks along the cut, and introduced a map to corroborate his opinion that a train on the track, anywhere north of Linwood and south of the mill-road crossing, was visible to a person passing along the road traveled by plaintiff from his brother's house to the crossing, they must disregard the plaintiff's statement, and answer the second issue "Yes." It was the province of the jury to determine whether the plaintiff did, in fact, after stopping and listening at the foot of the hill, ride sixty feet, looking and listening still, but in vain, from the shaft all the way, for a train that could not be seen till the horse was upon the track, and to say whether it was possible for him to see the approaching train or hear the noise, in the absence of signals, as it moved up-grade from the station In such a conflict the Court could not instruct the jury as to the weight of the testimony. Although the engineer may have failed to give the usual signals south of the depot or of either of the crossings, it was the duty of the plaintiff to look and listen before going upon the track, and he testified that he did. The jury were warranted by the testimony, therefore, in finding that he used ordinary care to guard against accident

before attempting to cross. His father, according to the evi-
dence, was deaf, and was compelled to rely upon the hearing
of the plaintiff, a boy of fourteen. It was not the duty of the
plaintiff, if, after listening at twenty yards distance and rid-
ing on the shaft he neither heard nor saw an approaching
train, to get down and look up and down the track, even
though his view of the railroad line was obstructed. *Rail-
road* v. *Ackerman*, 74 Pa. St., 265.

It was not error in the Court to give the jury the instruc-
tion as to the duty of the engineer to keep a vigilant out-
look, which is the subject of exception. It was not contended
that the proposition embodied in the instruction given was
not a correct statement of the law, but that it was inappli-
cable to the facts, and calculated to mislead the jury. There
was some evidence that counsel had a right to comment
upon and to have submitted to the jury, as tending to show
that after the engineer saw, or could, by keeping a proper
lookout, have seen the plaintiff's horse stepping upon the
track, he might have stopped his train altogether before
reaching the crossing, or have so lowered its speed as to
strike with little force and diminish the chances of serious
injury to the inmates of the wagon, who were thrown
seventy-five feet by the violent concussion.

The expert witness Rutherford, who was introduced for the
defendant, testified that the engineer might have seen a man
on his left within nine or ten feet of the track, on the mill-
road, when the engine was three hundred feet from the
crossing, and that he could have seen a horse six feet from
the track 1,000 feet from the crossing, and could have
stopped his engine within 500 feet. If the engineer could
have seen, or saw, the horse and was unable to tell whether
he was harnessed, and he seemed to be approaching the
track, it was his duty to slacken speed. *Snowden* v. *Railroad*,
95 N. C., 93; *Carlton* v. *Railroad*, 104 N. C, 365 If he saw
that the horse was attached to a covered wagon, and could

see that the inmates were not on the outlook but were inside the wagon, it was his duty to stop his engine. If the jury believed that the engineer had failed to give the usual signals, then it was his duty to keep a more vigilant watch along the track. He had no right under such circumstances to keep his seat as he approached the crossing, and also to direct the fireman to put coal in the engine, so that neither could keep a proper outlook upon the crossing after he had neglected to whistle. We are assuming that the jury believed the whistle was not blown north of the bridge, in order to show that there were phases of the evidence that warranted the Judge in giving, if they did not impose upon him the duty of giving, the instruction complained of. Counsel could not expect the Court to find as a fact and tell the jury that the fireman could not look out on the left because his fire had gone down while the train was sidetracked at Holtsburg, and the engineer could not get out of his seat long enough to look first on one side and then on other while his subordinate replenished the supply of coal. Whether he could stand up and keep his hand upon the throttle of the engine under such circumstances, and whether it was necessary to do so in order to provide for the safety of all who might expose themselves to danger of being injured by his train, were questions, not for the Court to pass upon, but for the jury to consider in their bearings upon the issues.

The Court below permitted the plaintiff to show by a witness that soon after the accident the defendant company repaired the crossing at the mill-road so as to make it less difficult to get upon the track. The defendant objected then, and assigns as error now the admission of the testimony. The Court assigned as a reason for the ruling, that it was competent to show in this way that the defendant knew of the existence of the crossing and treated it as a public crossing, or one that the corporation was under obli-

gations to keep in repair. Although the road may have been used as a mill road, it may also, as a plantation-road, have come within the requirement of § 1975 of *The Code*, which fact would have made it the duty of the company to keep it repaired. At that stage of the trial it is not difficult to see that it might become material for the jury to know whether such duty was imposed upon the defendant by law, especially if, in the further progress of the trial, it should appear that the engineer, by keeping a proper outlook, might have had reason to believe that the plaintiff's wagon was impeded by some defect in crossing. *Bullock* v. *Railroad*, 105 N. C., 180. It is evident, at any rate, that the defendant was not prejudiced by the ruling, because it could not have materially influenced the jury in their findings.

The Judge below had, unquestionably, the right, in the exercise of his discretion, to refuse the motion for a new trial on the ground of newly discovered evidence in any case. *Carson* v. *Dellinger*, 90 N. C., 226. There is no error, and the motion for a new trial must be refused.

Affirmed.