B. N. GILMORE v. CAPE FEAR AND YADKIN VALLEY RAILWAY COMPANY.

*Action for Damages—Accident at Railway Crossing—Failure to Give Signal of Approach of Train—Negligence—Contributory Negligence.*

1. Failure to blow signal at a railroad crossing is negligence on the part of the railroad company.

2. It is the duty of a person in charge of a wagon and team when approaching a public railroad crossing, to look and listen and take every prudent precaution to avoid a collision, even though i t be at a time when no regular train is expected, and particularly so if the approach way is narrow and dangerous.

3. Where, in the trial of an action against a railroad company for injuries caused by frightening plaintiff's mule at a railroad crossing by an approaching train which gave no signal as it neared the crossing, it appeared that the plaintiff upon seeing the train when he was about sixty steps from the crossing, dismounted from his wagon and held the mule which became unmanageable on hearing the sudden exhaust of steam from the engine. There was also

115—42

testimony that the road approach to the crossing was very steep and that there were deep gullies on the left side of it which prevented a team from turning out. Plaintiff testified that the approach was not so dangerous, but admitted that his mule was "scary": *Held,* that it was for the jury to determine, under proper instructions from the Judge, whether the approach to the crossing was so dangerous as to make it imprudent for the plaintiff to drive upon it sixty steps from the crossing, and whether the place where the team became unmanageable was so near the crossing as to give the plaintiff reasonable ground to anticipate danger unless he took the usual and necessary precautions.

This was a CIVIL ACTION, tried before *Hoke, J.,* and a jury, at Fall Term, 1894, of the Superior Court of CHATHAM County. The plaintiff tendered the following issues:

"1. Did the defendant negligently destroy the plaintiff's wagon and injure his mules and daughter?

"2. Was the plaintiff guilty of contributory negligence?

"3. If so, could the defendant, notwithstanding the contributory negligence of the plaintiff, have avoided the injury by the exercise of ordinary care?

"4. What are plaintiff's damages?"

The Court did not then decide on the issues tendered, but intimated that it might become necessary to frame two issues as to conduct of defendant, one in reference to injury to child and another in reference to injury to mules, that the issues would be finally determined when evidence was in or during the progress of the cause, and directed the trial to proceed and to this course no exception was taken, plaintiff however, insisting that the issues tendered by plaintiff were the proper issues.

The plaintiff then offered evidence tending to show that in August, 1893, plaintiff started from Goldston railroad station, on the Cape Fear and Yadkin Valley Railway, with his wife and four children to take a trip to Moore County; that he was driving a team of two mules to a covered wagon, and his wife and children were in the wagon, and he was sit-

ting in front driving, with his feet out on the tongue; that his route lay down the railroad, going in a southerly direction, first on one side of the road and then on the other; that soon after leaving Goldston the wagon road was for some distance as much as a mile from the railroad, then crossed, and for the remainder of the distance traveled on this occasion ran in the main down the railroad as far as a half mile from the railroad for part of the way; that at a crossing of the railroad about three miles of Goldston plaintiff's team was run into by the railroad freight train and much damage inflicted; that there was a whistle post five hundred yards back of the crossing, and at a point opposite whistle post the wagon road was two hundred yards distant straight across from the railroad, and bore on to the railroad at an acute angle till it crossed railroad where the injury occurred; that the wagon road from the point opposite the whistle post and some distance on was first a little down grade and then began to ascend slightly, and at a point sixty-five yards from crossing reached an eminence when it descended at a considerable grade, crossing road at grade or about it. The space between wagon road and railroad was clear at point opposite whistle post, but a short distance on there were woods between railroad and wagon road, and in going up the slant to the eminence the wagon could not have been seen from the railroad; that on the eminence the wagon could have been seen from the train at the whistle post, and persons on the eminence where wagon road crossed it could have seen along the railroad back to the whistle post and about two hundred yards further; that the way was clear from point where wagon was first stopped across to the railroad, but the railroad was there in a cut about half as deep as a freight car and wagon could not at that point have been seen from the train, but could have been seen further on as cut came down toward grade at crossing; that the freight train going south was due at Goldston when plaintiff left there, had not then arrived, and

plaintiff knew this, and plaintiff had not heard it pass but had been at one time as far as one mile distant from rail-road; that plaintiff had passed eminence ten or fifteen steps going down to the crossing when he heard train coming, jumped out and caught hold of the mule on the side next to the train, but the team got away from him and ran on to the railroad at or about the crossing, and the injury resulted as described by witnesses. That no whistle was blown at whistle post by defendant's train, and witness did not hear any sign of train till he heard it roaring at the point he stopped his wagon.

There was no evidence to show that plaintiff stopped and looked or listened for defendant's train before starting down the incline to the crossing.

At the close of the testimony, the Court having intimated an opinion that, in no aspect of the evidence could the plaintiff recover, the plaintiff submitted to a nonsuit and appealed.

Mr. *H. A. London,* for plaintiff (appellant).
Mr. *George M. Rose,* for defendant.

MACRAE, J.: There can be no question, upon the uncontradicted testimony, that the failure to blow for the crossing was negligence on the part of the defendant. *Randall* v. *Railroad,* 104 N. C., 410; *Hinkle* v. *Railroad,* 109 N. C., 472. The defendant, however, contends that plaintiff failed to "stop, look and listen," when he reached the point from which to the crossing it would be dangerous for the plaintiff to drive when a train was approaching. The principles here involved have been so clearly discussed and settled in recent cases in this Court, in those named above, and others there cited, that nothing is left for us but to apply known rules to the present circumstances.

Did the evidence offered by the plaintiff clearly show that the part of the road upon which the plaintiff had entered after passing the eminence, as it is called, and started down

grade to the crossing was so dangerous to travelers, in case of the approach of the train, that it was incumbent upon the plaintiff to look and listen for a train before proceeding further? The law is plain. "Where a person in charge of a wagon and team approaches a public crossing, it is his duty to look and listen and take every prudent precaution to avoid a collision, even though the approach be made at an hour when no regular train is expected to pass. The same degree of care and caution should be exercised by one who is about to drive into such a narrow and dangerous pass as is described by the witnesses, if he would avoid the responsibility for any injury that may result from his carelessness." Randall's case, *supra*.

According to the plaintiff's testimony, he was in about sixty steps of the railroad when he heard the train and saw it coming, and he immediately jumped out and caught the young mule by the bridle. It was then that the noise was made by the exhaust of steam, or, as the witness said, "steam puffed out," and the team in consequence became unmanageable.

The witness Hall testified that the slope of ground where the accident occurred was considerable, and to the left of the wagon where it occurred were woods and deep gullies, so that the wagon could not turn out. Whether the witness intended to be understood to mean the whole extent of the road from the top of the hill to the crossing, or simply that portion of the road at and near the place where the catastrophe happened, is left in doubt. The plaintiff himself, the principal witness, describes the approach to the railroad, but not in such terms as would warrant the conclusion that it was so dangerous; and he admits that he was driving a young and "scary" mule; and he tells of his action and conduct on the occasion referred to. Was this testimony so clear that only one inference could be drawn from it? If so, it was the duty of the Judge to decide whether there was such con-

tributory negligence as relieved the defendant from ordinary care, and amounted, in itself, to the proximate cause of the damage received by plaintiff. The province of the Judge and that of the jury is explained in *Deans* v. *Railroad*, 107 N. C., 686. "Men of fair and reasonable minds might have drawn different conclusions from the evidence in this case." Was the place where the team became unmanageable so near to the crossing or to the track of the railroad that the plaintiff had reasonable ground to anticipate danger, unless he took the prescribed precautions for one approaching the crossing? Or, was that portion of the county road on which the plaintiff was then driving of such a dangerous character that it would not have been prudent for him to drive upon it at a distance of some sixty steps from the crossing? And in the solution of these inquiries, was the jury satisfied that from this point all the way to the crossing the plaintiff could not ordinarily have stopped that particular team, or turned it away from the railroad? There are possibly other questions involved, facts to be found by the jury under proper instructions from his Honor, and which were not so clear that he was authorized to pass upon them himself.

New Trial.

SHEPHERD, C. J., and BURWELL, J., dissent.