CHARLES H. NORTON v. THE NORTH CAROLINA RAILROAD COMPANY.

(Decided April 12, 1898.)

*Action for Damages—Railroads—Injury at Crossing— Negligence—City Ordinance Regulating Speed of Train—Obstructions to View of Railroad Track— Signals—Contributory Negligence—Continuing Negligence — Proximate Cause — Excessive Damages-- Setting Aside Verdict—Liability of Lessor Railroad Company for Wrongful Act of Lessee.*

1. Where, in the trial of an action for damages for injuries to the plaintiff while crossing defendant's track, it appeared by uncontradicted testimony, that the crossing where the accident occurred was

a public street, in a populous part of the town; that plaintiff's view of the track and approaching train was cut off by a long line of box cars; that the train approached the crossing at a speed of about twenty miles an hour without giving any signal whatever and that the municipal ordinances prohibited a greater rate of speed than eight miles per hour; *Held*, that such facts constituted negligence *per se*, in its nature gross and continuing to the moment of the accident, and the Court properly refused an instruction that, if the jury believed the evidence, the plaintiff's injuries were not caused by the defendant's negligence and plaintiff was guilty of contributory negligence.

2. A city ordinance regulating the rate of speed of a railway train is presumably passed for the protection of the people and when within the scope of the city charter has the force and effect of law and a citizen has the right to expect that it will be respected and obeyed by the railroad corporation.

3. While the fact that a train is running at an excessive speed, beyond that allowed by a city ordinance, will not relieve a person approaching a railroad crossing from the necessity of observing ordinary care, still, if it misleads him or the defendant is deprived thereby of its last clear chance to avoid an accident, it may go to the jury, both on the issues of negligence and contributory negligence.

4. While, in a certain sense, a railroad train has the right of way on its track and it is the duty of a person approaching the track to stop if he knows it is immediately coming or could know it by due care, it is equally the duty of the railroad company to give suitable notice of its approach to the crossing by signal in order that a collision may be avoided; and while greater care is required of one so approaching a crossing where his view is obstructed by a long line of box cars on a contiguous track, equal care is demanded of the railroad *in* the matter of giving notice of approach of a train the view of which is so obstructed.

5. The obligations, rights and duties of railroads and travelers upon intersecting highways are mutual and reciprocal and no greater degree of care is required of one than of the other, the right of precedence allowed to the railroad on its track and the duty of the traveler to avoid a collision being accompanied with and conditioned upon the duty of the train to give due and timely warning of approach.

6. There is never any presumption of contributory negligence; on the contrary, where there is no evidence of the fact, the presumption is against contributory negligence, even in the absence of a statute making it a matter of affirmative defence.

7. It was not error in the trial Judge to refuse to give instructions which while containing legal principles correct in the abstract, were based on a partial statement of selected facts without reference to other or qualifying circumstances, where such principles were embraced in the charge to as great an extent as could be rightfully asked, it being a well settled rule that the Court below is not required to give special instructions in *ipsissimis verbis*, even if otherwise unobjectionable and is not required to give them at all in a separate and distinct form if they are substantially included in the charge as given.

8. Where, in the trial of an action for damages for personal injuries caused by the alleged negligence of defendant railroad, it appeared that plaintiff on approaching the defendant's track at a street crossing, stopped at a distance of sixty feet therefrom and looked and listened; that his view of the track was obstructed by a line of box cars standing on a side track; and that, in attempting to cross, he was struck by a train running at an unlawful rate of speed without giving any signal of its approach; *Held*, that the Court properly refused an instruction that, if the plaintiff's injury was due to the fact that such cars were standing on the side track, such injury was not the result of the defendant's alleged negligence.

9. Where the negligent omission of duty continues up to the time of an accident causing an injury, it becomes the proximate cause—the *causa causans*—of the injury and, to a certain extent, relieves the person injured from liability for the want of such care as he would otherwise take had he not been thrown off his guard by such negligent act or omission of duty.

10. A lessor railroad company is liable for the negligence of its lessee in operating the railroad.

11. The refusal of the trial Court to set aside a verdict on account of excessive damages cannot be reviewed on appeal.

CIVIL ACTION for damages for personal injuries to plaintiff, tried before *Allen, J.*, and a jury at March Term, 1897, of DURHAM Superior Court. There was a verdict for the plaintiff who was awarded $20,000 as damages and from the judgment thereon defendant appealed. The defendant company is and was at the time of the injury to the plaintiff, leased to and operated by the Southern Railway Company. The facts necessary

to an understanding of the opinion, the instructions asked for and given or refused, the exceptions noted on the trial and his Honor's charge in full, are all set out in the opinion of Associate Justice DOUGLAS.

*Messrs. Winston & Fuller* for plaintiff.

*Messrs. Chas. Price, F. H. Busbee* and *Guthrie & Guthrie* for defendant (appellant).

DOUGLAS, J.: This is an action to recover damages for injuries received by the plaintiff through the negligence of the defendant's lessee, the Southern Railway Company. The plaintiff alleged that through such negligence he was injured in attempting to cross the track of the defendant on Dillard street in the town of Durham on the 2nd day of May, 1896. The defendant answering denied any negligence of itself or its lessee, and alleged that the plaintiff was injured by his own negligence, and that, if there was any negligence on the part of its lessee, the plaintiff contributed to his injury by his own negligence, and, further, that it was not responsible in any event for the negligence of such lessee. The following issues were submitted on motion of the defendant:

(1) "Was the plaintiff injured by the negligence of the lessee of defendant, as alleged in the complaint." Answered, "Yes."

(2) "Did the plaintiff by his own negligence, contribute to the injury complained of?" Answered, "No."

(3) "What damage did plaintiff sustain?" Answered, "$20,000."

All the issues having been found in favor of the plaintiff, judgment was rendered accordingly.

The defendant appealed to this Court assigning as error:

"1. The failure of the Court to give the instruction prayed for by the defendant as set out in the case on appeal, exceptions 1 to 8 inclusive.

2. The charge of the court as set out in exceptions 9 to 13 inclusive.

3. The refusal of the court to grant a new trial, as set forth in exception 14.

4. The refusal of the court to set aside the verdict because it was excessive, as set out in exception 15.

5. The refusal of the court to arrest the judgment because it was not responsive to the issues, as set out in exception 15.

The defendant offered no evidence and objected to none of the plaintiff's evidence. The only exceptions are to the charge of the court and the refusal to give certain of the defendant's prayers for instructions.

At the close of the evidence the defendant asked for the following instructions to the jury:

1. If the jury believe the evidence, plaintiff's injury was not caused by the negligence of the defendant, and the answer to the first issue should be "No."

(This instruction was refused and the defendant excepted. 1st exception.)

2. Defendant had a right to leave its cars on its side-track in the position described by the witnesses, and if the plaintiff's injury was due to the fact that the cars were standing on the side-track, as described, the answer to the first issue should be "No."

(This instruction was refused except as given in the charge, and defendant excepted. 2nd exception.)

3. The rate of speed at which the train was run, has nothing to do with this case unless the jury believe that, if the train had been running within the limit prescribed by the town ordinance, to-wit, not more than eight miles an hour, it could have been stopped after plaintiff's danger might, by reasonable care, have been discovered by the engineer in time to have avoided the accident.

(This instruction was refused, except as given, in the charge, and defendant excepted. 3rd exception).

The Court also gave the following instructions, No. 4, 5, 6, 7.

4. If the jury believe that the defendant was ringing its bell as it approached the crossing, and continued to ring it up to the crossing or to a point where it would have given the plaintiff warning, of the approach of the train, if he had been exercising proper care, the answer to the first issue should be "No."

5. It was the duty of the plaintiff to look and listen carefully for trains, as he approached the crossing, and if he failed to do either, and this was the proximate cause of his injury, the answer to the second issue should be "Yes."

6. When the plaintiff saw the cars on the side-track obscuring his view of the main line of the defendant's road, it was his duty to use his sense of hearing, all the more diligently, and if he could have heard the approaching train by listening carefully in time to avoid the accident, the answer to the second issue should be "Yes."

7. If the jury believe the train was running beyond the rate of eight miles an hour, that no bell was ringing or other signal given of the approach of the train to the crossing, still this or any other negligence of the defendant did not excuse the plaintiff from his use of the

proper care for his own safety; he should have looked and listened all the time, until he reached the crossing, and if his failure to do either was the cause of his injury, the answer to the second issue should be "Yes."

8. If the jury believe that the plaintiff stopped to listen at the first track of the D. & N., and then proceeded to cross, without further stopping to listen, the answer to the second issue should be "Yes."

(This instruction, in this language and except as given in charge, was refused and defendant excepted. 4th exception.)

9. If the jury believe that the plaintiff after leaving the point where he first stopped, to-wit, at the first track of the D. & N., then proceeded on his way, and attempted to cross without further listening, the answer to the second issue should be "Yes."

(This instruction was refused, except as modified and given in the charge and defendant excepted. 5th exception.)

11. If the plaintiff could have heard the approaching train, by stopping and listening carefully, immediately before entering upon the crossing, and failed to so stop and listen, the answer to the second issue should be "Yes."

Given by Court.

11a. The burden is upon the plaintiff to show that his injury was caused by the negligence of the defendant, and if he has failed to do this by a preponderance of the proof, the answer to the first issue should be "No."

This instruction was given by the Court.

12. If the jury believe the evidence, the plaintiff contributed by his own negligence to his injury, and the answer to the second issue should be "Yes."

(This instruction was refused, except as given, in the charge and defendant excepted.    6th exception.)

13. If the jury believe the evidence, other persons less favorably situated than the plaintiff heard the approach of the train, and these persons were put on the witness stand and their credibility vouched for by the plaintiff; there is no evidence that plaintiff's hearing is defective, he himself testifies that his hearing was good, and what his witnesses could hear, he ought, in the exercise of the care required of him under the circumstances of this case, to have heard, and the answer to the second issue should be "Yes."

(This instruction was refused, except as given in the charge, and the defendant excepted. Exception 7).

14. The plaintiff swears that he has been a resident of Durham for ten years or over prior to the accident; that he had frequently crossed the railroad at this point before; that he knew the trains, both passenger and freight, were frequently passing on this and other parallel roads and that cars were frequently being shifted up and down on both roads at this point, and that the train which struck him was due to pass at about the time that he attempted to cross—it was therefore his duty to be extremely cautious in attempting to cross the track at this point, and to exercise his sense of sight and hearing all the time and all the way in crossing, and when he saw his view of the main line obstructed by the cars on the side-track, he should have been the more vigilant in the exercise of his sense of hearing, and if at the time he was crossing he was engaged in conversation with his companion, and on that account was not so attentive to his surroundings, and this lack of attention caused his injury, the answer to the second issue should be "Yes."

(This instruction was refused, except as given in the charge, and defendant excepted. 8th exception.)

15. If the plaintiff did not know that the moving train was approaching the crossing, but by the exercise of ordinary care under the circumstances he could have done so, and thereby avoided the injury, then he took the risk of an accident upon himself, and the jury should answer to the second issue, "Yes."

(This instruction was given.)

16. The Court also charged the jury that if they should answer the first issue, "No," they need not consider the other issues at all, or if the jury should answer the first issue, "Yes," and the second issue "Yes," they need not consider the third issue at all.

JUDGE'S CHARGE.

"This is an action brought by the plaintiff, C. H. Norton against the North Carolina Railroad Company for alleged damages by reason of injuries received on the 2d day of May, 1896, upon the complaint that the said injuries were due to the negligence of the defendant's lessee, the Southern Railroad Company. The defendant denies that it was negligent, and says further, that, if it was so, the plaintiff contributed to his injuries by his own negligence; and if not, its lessee would be liable for damages.

Upon the pleadings and evidence the Court submits the following issues to the jury:

1. Was the plaintiff injured by the negligence of the lessee of the defendant, as alleged in the complaint?

2. Did the plaintiff by his own negligence contribute to the injury complained of?

3. What damage did plaintiff sustain?

The defendant offers no evidence, but relies upon the evidence of the plaintiff, which it may do.

You should remember the contentions of the counsel

and their arguments that are deducible from the evidence. You should not allow yourself to be prejudiced by remarks of counsel as to corporations. The defendant is entitled to as fair and impartial trial as any individual. The plaintiff contends, among other things, that the first issue should be answered, "Yes"; that the engineer did not ring the bell nor blow the whistle; that the train was running at a rapid speed; that the boxcars were so placed by the defendant lessee that he could not see the train coming, nor hear the train; that it had gotten at such a rapid rate of speed that it had ceased to make much noise. He further contends that he was not negligent at all; but that if he was so, notwithstanding such negligence, the defendant could have avoided the injury, and its negligence was the last and proximate cause of the injury, and that you should answer the first issue, "Yes," and the second issue, "No."

The defendant says on the contrary, among other things, that it was not guilty of negligence, and that the plaintiff's injury is due to his own negligence; and, even if it was guilty of negligence, the plaintiff contributed to the negligence in such a way as not to make it liable for damages. The defendant further contends that the plaintiff did not exercise ordinary care; that he stopped too soon and did not stop long enough to inform himself; he was negligent in not listening sufficiently; that he drove recklessly across the track, and that if he had exercised proper care the injury would not have occurred, and that you should answer the first issue, "No"; or, if the first issue, "Yes," then the second issue, "Yes," also, and that it was not liable for damages.

The burden of proving the first and third issues by

preponderance of evidence is upon the plaintiff, and if he has failed to do so, the first issue should be answered, "No."

The burden of proving the second issue is upon the defendant; and if it has failed to do so by a preponderance of the evidence, the answer to the second issue should be "No."

(*a*) It is the duty of an engineer in charge of a running train to give some signal of its approach to the crossing of a public street or highway over a railroad track; and when he fails to do so the railroad company is deemed negligent, and answerable for any injury due to such omission of duty (*b*).

[And to so much of the charge as is between (*a*) and (*b*) defendant excepted.   9th exception.]

It is the duty of a person approaching the crossing of a railroad track to make reasonable and diligent use of his senses to discover if there is a reason to apprehend danger of a collision.

Upon the first issue the Court instructs you that by negligence is meant the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation,—the omission to use means reasonably necessary to avoid injury to others.

Now, if from evidence in this case, you shall find that the defendant's lessee failed to blow the whistle or ring the bell at a public and much-used crossing (if you find that crossing where the injury occurred was such), and in consequence thereof the injury to the plaintiff was caused, you will answer the first issue, "Yes," otherwise you will answer it "No."   The rate of speed at which the train was moving would not be negligence or evidence of negligence, unless the jury believe that if

the train had been running within the limits prescribed by the town ordinance, to-wit: not more than eight miles an hour, the injury would not have occurred.

If the jury believe that the lessee of the defendant was ringing its bell up to the crossing or to a point where it would have given the plaintiff warning of the approach of the train, if he had been exercising proper care, the answer to the first issue should be "No."

It was the duty of the plaintiff to look and listen carefully for the train as he approached the crossing; and if he failed to do either, and such failure was the proximate cause of his injury, the answer to the second issue should be "Yes."

When plaintiff saw the cars on the side-track, obscuring his view of the main line of defendant's road, it was his duty to use his sense of hearing all the more diligently; and if he could have heard the approaching train by listening carefully in time to avoid the accident, the answer to the second issue should be "Yes." But if the box-cars on defendant's side-track were so standing as to obscure plaintiff's vision of the approaching train, and no bell was rung and no whistle blew, and plaintiff could not by such use of his senses of hearing and seeing tell that the train was approaching, and he attempted to cross and was injured; and you find that such failure to ring the bell or blow the whistle was the proximate cause of the injury, then you should answer the second issue, "No."

If the jury believe that the train was running beyond the rate of eight miles an hour, that no bell was ringing or other signal given of the approach of the train to the crossing, still this or any other negligence of the defendant did not excuse plaintiff from the use of the proper care for his safety. It was his duty to have

looked and listened all the time until he reached the crossing ; and if his failure to do so was the proximate cause of his injury, the answer to the second issue should be ''Yes.''

(*c*) It was the duty of the defendant's lessee to use signals in approaching the crossing; and if the jury believe from the evidence that defendant's lessee was running its train at a greater rate of speed than eight miles an hour, and failed to ring its bell or blow its whistle as it approached the crossing, and a line of box-cars was standing on the side track so as to obstruct the sight and interfere with the hearing ; and that its failure to give the signals under the circumstances was the proximate cause of the injury, then you should answer the second issue, ''No.'' (*d*).

[And to so much of the charge as is between the letters (*c*) and (*d*) defendants excepted.    10th exception.]

There is evidence that plaintiff stopped at the first track of the D. and N. road to look and listen ; if so, and he did not exercise such care and diligence in the selection of the proper place to stop and listen, under all the circumstances as were reasonable, and a failure to do so was the proximate cause of his injury, then you should answer the second issue, ''Yes.''

(*e*) If, however, you find that this was not the best place to have stopped ; but that if a better place had been selected, and by reason of defendant's failure to ring the bell or blow the whistle and the obstruction of the box-cars plaintiff could not have seen or heard from such better position and such negligence of the defendants, if you find that there was such, was the proximate cause of the injury to the plaintiff, you should answer the second issue ''No.'' (*f*).

[And to so much of the charge as is between (e) and (f) the defendant excepted.    11th exception.]

When the plaintiff saw the freight cars on the siding cut off his view of the main line of the defendant's road, it was his duty to stop and listen carefully immediately before entering upon the crossing of the defendant's road, and if he failed to do so, and that was the proximate cause of the injury, the answer to the second issue should be "Yes."

In considering plaintiff's carefulness you will consider the evidence of the other witnesses who saw and heard the approach of the train and you will consider their positions and the position of the plaintiff, the opportunities of all to see and hear, and if from such evidence you find that plaintiff, whose hearing was good, was negligent, and could have seen or heard the approaching train and his negligence was the proximate cause of the injury, you should answer the second issue "No."

If the plaintiff had long been a resident of Durham and had frequently crossed the railroad at this point and knew the trains, both passenger and freight, were frequently passing on this and other parallel roads, and that cars were frequently being shifted on this and other roads, and that the train which struck him was due about that time, and attempted to cross, it was his duty to be very cautious in attempting to cross at this point then and to exercise his senses of sight and hearing all the time and all the way across, and when he saw his view of the main line obstructed by the cars on the side track, he should have been the more diligent, and if he was negligent in these particulars, and by reason thereof he was injured, and that negligence was the proximate cause of the injury, you should answer the second issue "Yes."

If the jury believe plaintiff contributed by his own negligence to his injury, then the answer to the second issue should be "Yes."

The foregoing instructions that bear upon the second issue are subject to the following further instructions.

Contributory negligence is "Such an act or omission on the part of the plaintiff amounting to a want of ordinary care as, concurring or co-operating with the negligent act or omission of the defendant, is the proximate cause or occasion of the injury complained of."

(*g*) And the court further charges you, that even if plaintiff contributed to his own injury by his negligence, if you find that he was negligent, and if you further find that such injury was caused by the negligence of the defendant, still, if this negligence of the defendant was the proximate, that is the immediate cause of the injury, you should answer the second issue "No." (*h*).

[And to so much of the charge as is between (*g*) and (*h*) defendant excepted.   12th exception.]

(*i*) Could the defendant by the exercise of reasonable care and prudence have avoided the injury, notwithstanding the negligence of the plaintiff, if he was negligent ?   If he could, then the answer to the second issue should be "No."   (*j*).

[And to so much of the charge as is between (*i*) and (*j*) defendant accepted.   13th exception.]

If it could not, it should be "Yes" ; if the jury answer the first issue "No," they need not consider the other issues at all ; if the jury answer the first issue "Yes," and the second issue "Yes," they need not consider the third issue as to damages.

But if the jury answer the first issue "Yes," and the

second issue "No," they will proceed to consider the question of damages.

If the jury reach the issue of damages you can take into consideration plaintiff's loss of time from business or employment, his condition before the injury and since, and any loss of capacity you may find reasonable, whether temporary or permanent disability. All necessary expenses of himself and necessary attendants, mental and physical suffering undergone in consequence of the injury. You may consider and answer what would be a fair and reasonable compensation, taking into consideration what the plaintiff's income would probably have been, how long it would probably have lasted, and all the reasonable contingencies to which it was liable; also for injuries to horse and buggy.

You can allow as compensatory damages what in your judgment, upon the evidence, is a reasonable amount, but this is not a case for punitive damages.

And after giving all these matters a fair and reasonable consideration, say what damage the plaintiff is entitled to recover, not the equivalent for the loss, but some reasonable sum in compensation.

The burden is on the plaintiff to show that he is damaged by a preponderance of the evidence."

The jury found all the issues in favor of the plaintiff and rendered a verdict for $20,000, as appears from the record proper, and then there was a motion by the defendant for a new trial on the grounds, as it appears from the Assignment of Errors, that the Court refused to give the jury in charge the instructions asked for by the defendant, and erred in his charge as set out in the Case on Appeal and Assignment of Error. The defendant also asked that the verdict be set aside, for the reason that the damages assessed by the jury were exces-

sive. Motion refused and the defendant excepted. [14th exception.]

The defendant's counsel then moved in arrest of judgment upon the grounds that the verdict upon the issues was not responsive to the allegations contained in the complaint.

Motion that the judgment be arrested was overruled and judgment rendered for the plaintiff according to the verdict. From this judgment the defendant appealed. Notice waived.

The length of the charge and the numerous and lengthy prayers of the defendant, render it impracticable to discuss each one fully in detail. In our opinion none of the exceptions can be sustained. The prayers refused were either essentially erroneous or contained expressions which were misleading and properly excluded. In the latter case, the substance of the prayers was given in the charge as far as it was proper to do so.

The first and twelfth prayers were to the effect that, if the jury believed the evidence, the plaintiff's injury was not caused by the defendant's negligence and that, the plaintiff was guilty of contributory negligence. In view of the evidence, neither could possibly have been given. There was undisputed testimony tending to show that the crossing where the plantiff was injured was a public street, much used and in a populous part of the city ; that the plaintiff's view of the track and the approaching train was cut off by a long line of box cars, 25 or 30 in number ; that the train approached the crossing at a rate of speed approximating 20 miles an hour, without ringing its bell or sounding its whistle, or giving any other signal whatever ; and that the ordinances of the City prohibited a greater rate of speed than eight miles an hour.

This, in our opinion constituted negligence *per se*, in its nature gross and continuing to the moment of the injury.    The injury occurred at a public crossing where the rights of the plaintiff and the defendant were equal and their duties mutual.    Both were bound to obey the law and both were liable for any failure to observe that degree of care which the peculiar circumstances of the case required.    It is not denied that the train was running at an unlawful speed, that is, at a rate of speed forbidden by the town ordinances.    Such ordinances are presumably passed for the protection of the people, and when within the scope of its charter have the force and effect of law.    An ordinance regulating the rate of speed of a railroad train or any vehicle is based upon the assumption, derived from experience, that a greater rate of speed is dangerous to the life and limb of the citizen, which are entitled to the highest protection of the law.    The citizen, himself subject to the law, has a right to assume that the corporation will render an equal obedience.    While such excessive speed will not relieve the plaintiff from the necessity of observing ordinary care, if it misleads him or deprives the defendant of its last clear chance to avoid the accident, it may properly go to the jury both on the issues of negligence and contributory negligence.    In a certain sense the train has the right of way, that is, it was the duty of the plaintiff to stop until the train had passed if he knew it was immediately coming, or could have known it by due care.    But it was equally the duty of the defendant, claiming the right of way, to give the plaintiff suitable notice of its coming, either by ringing a bell or sounding a whistle, or both, so as to give the plaintiff a reasonable opportunity of avoiding the collision.    The plaintiff had a right to expect such notice.    The

failure to give such notice would materially affect
the issue of contributory negligence, as the plain-
tiff cannot be held to a higher degree of care on
account of the unexpected negligence or breach of
duty of the defendant. It is true that the obstruc-
tion of view by the line of box cars demanded greater
care on the part of the plaintiff, but it also demanded
equal care on the part of the defendant. To permit the
defendant to increase the danger by its own deliberate
act and then to avoid all liability for its own negligence
on account of the increased degree of care it had forced
upon the plaintiff, cannot be permitted. The highway
belongs to the travelling public fully as much as the
track does to the railroad company ; and for the com-
pany to block up the highway without absolute neces-
sity or to render its use so dangerous as to deter the
travelling public, or keep them in constant fear of life
and limb, would be a material and unlawful interfer-
ence with vested rights. The time honored maxim,
*sic utere tuo ut alienum non laedas*, is still the law of
the land, applicable equally to the corporation and to
the citizen. In fact, the rights, duties and liabilities of
the corporation and of the citizen are similar under sim-
ilar circumstances and are equal before the law. What-
ever difference there may be is such only as arises of
necessity from the bodily humanity of the one and the
intangible entity of the other.

The evidence tended to show that the plaintiff stopped,
looked and listened when 60 feet from where he was
struck. There is never any presumption of con-
tributory negligence, as self-preservation is the first in-
stinct of humanity. Where there is no evidence of the
fact, the presumption is against contributory negli-
gence, even in the absence of any statute, like our own,

making it a matter of affirmative defence. *Texas Pacific Railway* v. *Gentry*, 163 U. S., 353, 366; *Railroad Co.* v. *Griffith*, 159 U. S., 603, 609.

In *Grand Trunk Railway* v. *Ives*, 144 U. S., 408, 417, the court says : "What may be deemed ordinary care in one case may, under different surroundings and circumstances, be *gross negligence*. The policy of the law has relegated the determination of such questions to the jury under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." Cited, quoted and approved in *Texas, etc.* v. *Gentry*, *supra*; *Warner* v. *B. & O. R. R. Co.*, 168 U. S. 339, 348.

The settled rule of the Federal Courts as to the relative rights, duties and responsibilities of a railroad company and a traveller crossing its track on a highway is that expounded in *Continental Improvement Co.* v. *Stead*, 95 U. S., 161. That was the case of a collision of a railroad train with a wagon. There was evidence tending to show that the plaintiff, who was driving the wagon, looked to the southward, from which direction the next regular train was to come, and did not look northwardly from which this train came; that his

122—59

wagon produced much noise as it moved over the frozen
ground ; that his hearing was somewhat impaired ; and
that he *did not stop* before attempting to cross the
track.   The evidence was conflicting as to whether the
customary and proper signals were given by those in
charge of the locomotive, and as to the rate of speed at
which the train was running at the time.   The counsel
for the railroad company requested the court to give
certain specific instructions to the general effect that
the plaintiff should have looked out for the train and
was chargeable with negligence in not having done so,
and that it is the duty of those crossing a railroad to
listen and look both ways along the railroad before go-
ing on it, and to ascertain whether a train is approach-
ing or not.   The trial judge refused to adopt the in-
structions framed by counsel, and charged in substance
that both parties were bound to exercise such care as
under ordinary circumstances would avoid danger—such
care as men of common prudence and intelligence would
ordinarily use under like circumstances; that the amount
of care required depended upon the risk of danger ; and
explained the circumstances which bore on that ques-
tion.   He charged, in short, that the obligation, rights
and duties of railroads and travellers upon highways
crossing them are mutual and reciprocal, and no greater
degree of care is required of the one than of the other.
The   plaintiff   recovered.   In   affirming   the   judg-
ment, Mr. Justice Bradley, speaking for the entire
court said;   "If a railroad crosses a common road
on the same level, those travelling on either have a legal
right to pass over the point of crossing, and to require
due care on the part of those travelling on the other, to
avoid a collision   Of course, these mutual rights have
respect to other relative rights subsisting between the

parties.   From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it will stop and give precedence to an approaching wagon to make the crossing first ; it is the duty of the wagon to wait for the train.   The train has the preference and right of way.   But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass and to use every exertion to stop if the wagon is inevitably in the way.   Such warning must be reasonable and timely.   But what is reasonable and timely warning may depend upon many circumstances.   It cannot be such, if the speed of the train be so great as to render it unavailing.   The explosion of a cannon may be said to be a warning of the coming shot but the velocity of the latter generally outstrips the warning.   The speed of a train at a crossing should not be so great as to render unavailing the warning of its whistle and bell, and this caution is especially applicable when their sound is obstructed by wind and other noises, and when intervening objects prevent those who are approaching the railroad from seeing a coming train.   In such cases, if an unslackened speed is desirable, watchmen should be stationed at the crossings.

"On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. . . . We think the Judge was perfectly right therefore in holding that the obligations, rights and duties of railroads and travellers upon intersecting highways are mutual and reciprocal, and that no greater degree of care is required of the one than of the other.   For, conceding that the railway train has the right of precedence in crossing, the parties are still on equal terms as

to the exercise of care and diligence in regard to their relative duties. The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision. *It is accompanied with, and conditioned upon the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is based upon this condition.* Both parties are charged with a mutual duty of keeping a careful lookout for danger, and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty. . . . The mistake of the defendant's counsel consists in seeking to impose upon the wagon too exclusively the duty of avoiding collision, and to relieve the train too entirely from responsibility in the matter. Railway companies cannot expect this immunity so long as their tracks cross the highways of the country upon the same level. The people have the same right to travel on the ordinary highways as the railway companies have to run trains on the railroads."

The case was reaffirmed, quoted from and followed in *B. & O. R. R. Co.* v. *Griffith, supra,* and in *Texas Pacific Railway Company* v. *Cody,* 116 U. S. 606, 614. In the latter opinion it is said to be the *settled rule* of the court. For this reason we have quoted from it so extensively, and may add that it not only commands respect from the high source from which it comes and the ability with which it is written, but that the principles therein so clearly enunciated commend themselves to our legal judgment and common sense. They seem peculiarly to fit the facts of the case at bar, and aid us materially in its determination, not only in reviewing the charge of his Honor, but also in passing upon his

refusal to give the special instructions asked by the defendant. Some of those instructions refused may have contained legal principles correct in the abstract, but, based upon a partial statement of selected facts without reference to other qualifying circumstances, presented too strained an application of the law for a just determination of the questions at issue. They were given to a large extent in the charge, fully as much so as the defendant could rightfully ask. In fact it is questionable whether some parts that were given could stand the test of exception, but that is not now before us. It is a well settled rule of this court that the court below is not required to give special instructions in *ipsissimis verbis*, even if otherwise unobjectionable ; and is not required to give them at all in a separate and distinct form if they are substantially included in the charge as given. In addition to our own numerous authorities, we are sustained in this view by the same precedent above referred to, (*Continental Improvement Co.* v. *Stead*), where the court on pp. 165, commenting upon the prayers of defendant railroad (plaintiff in error) says : "Perhaps some of the abstract propositions of the defendant's counsel contained in the instructions asked for, based on the facts assumed therein, if such facts were conceded, or found in a special verdict, would be technically correct. But the Judge was not bound to charge upon the assumed facts in the *ipsissima verba* of counsel, nor to give categorical answers to a juridical catechism based on such assumption. Such a course would often mislead the jury instead of enlightening them, and is calculated rather to involve the case in the meshes of technicality than to promote the ends of law and justice. It belongs to the judicial office to exercise discretion as to the style and form in which to expound the law and comment

upon the facts." And again on page 168: "Here is no assumption of facts, as in the previous instruction, but it states the duty of persons approaching a railroad with wagons and teams in a more absolute and qualified form than we think admissible.

"It states such duty with the rigidity of a statute, making no allowance for modifying circumstances or for accidental diversion of the attention, to which the most prudent and careful are sometimes subject ; and assuming in effect that the duty of avoiding collision lies wholly, or nearly so, on one side."

That the court is not required to give the special instructions as asked, even when objectionable, was decided at the last term of this court in *Edwards* v. *Phifer*, 121 N. C., 388, 391; citing *Patterson* v. *McIver*, 90 N. C., 493 ; *Brink* v. *Black*, 77 N. C., 59 ; *State* v. *Hargrave*, 103 N. C., 328. This court has repeatedly held that it is not error in the trial judge to refuse an instruction upon an issue directed to the ascertainment of a fact that in a certain event the plaintiff could not recover. *McDonald* v. *Carson*, 94 N. C., 497 ; *Farrell* v. *Railroad*, 102 N. C., 390 ; *Baker* v. *Brem*, 103 N. C., 72 ; *Alexander* v. *R. R. Co.*, 720, 732. The second exception was properly overruled, as the prayer was objectionable as a whole, and the substance thereof given in the charge to the fullest extent that the defendant could properly ask. *Myers* v. *Railroad*, 87 N. C. 345 ; *Harrell* v. *Railroad*, 110 N. C., 215; *Alexander* v. *Railroad*, 112 N. C., 720, 733 ; *Ward* v. *Railroad*, 109 N. C., 358 ; *Hinkle* v. *Railroad*, 109 N. C., 472; *Borden* v. *Railroad*, 113 N. C., 570. The 9th, 10th and 11th exceptions are equal untenable.

In *Hinkle* v. *Railroad, supra,* this court says : "It is *negligence, per se,* because of the peril both to passen-

gers on trains and people using highways, to omit to give in reasonable time some signal from a train moving, whether at the rate of 20 or 40 miles an hour, when it is hidden from the view of travellers who may be approaching and in danger of coming in collision with it, by the cars of the company left standing on its track, or by an embankment, a cut, or a sharp curve in its line, or by any other obstruction allowed to be placed or placed in any way by the company," citing numerous cases on page 473. See also *Gilmore* v. *Railway*, 115 N. C., 657. In Hinkle's case it was also held that if the plaintiff would not have ventured upon the track but for the failure of the defendant to give timely warning, the corporation is liable to answer in damages, though the plaintiff may have been careless in exposing himself to danger, citing *Deans* v. *Railroad*, 107 N. C., 686, and cases therein cited. This principle was reaffirmed in *Russell* v. *Railroad*, 118 N. C., 1098, and in *Mesic* v. *Railroad*, 120 N. C., 489. That a failure to give reasonable warning by bell or whistle on approaching a highway, or even a place where the public have been permitted habitually to cross, is always evidence of negligence to be submitted to the jury, and in case of peculiar danger may be negligence *per se*, is well settled in other jurisdictions. Shearman & Redfield on Negligence, Section 463, 464; 2 Wood's Railway Law 1292, 1302; 3 Rapalje & Mack Digest R. L. pp. 493,, Section 92, 93, 94, 95, 96 and 97; Am. & Eng. Enc. of Law, pp. 910, 911 and 912.

The 13th and 14th exceptions were strenuously urged by the defendant's counsel as being erroneous in themselves, contradictory to other portions of the charge, and evidently applying to the doctrine of the last clear chance when there is no issue presented upon that ques-

tion and no evidence to support such an issue. This portion of the charge can scarcely be objected to as intrinsically erroneous as an abstract principle of law, and hence we must consider its application to the facts of the case now under consideration. In this view it seems to us to refer, not to the last clear chance, but to the continuing negligence of the defendant, which, by virtue of its continuation up to the moment of the accident, is of itself the proximate cause of the injury.

Such negligent omission of duty was not only the *causa causans* of the injury, but to a certain extent relieved the plaintiff from liability for the want of such care as he would otherwise have taken had he not been thrown off his guard by the negligent act or omission of the defendant. This court has said in Hinkle's case, *supra*, that the plaintiff "is only bound to look when to do so would aid him in determining whether a train is approaching". In Lloyd's case, 118 N. C., 1012, that "every person that used the track as a foot way, under the implied license of the defendant, had reasonable ground to expect that such care would be exercised, and to feel secure that in acting upon that supposition;" and in *Stanly* v. *Railroad*, 120 N. C., 514, that "the plaintiff was not required to be on the lookout for his safety, if there was no light on the box-car or other proper signal given to warn him of his danger. It was not incumbent on him to be on the lookout for a danger which he had no reasonable ground to apprehend to exist." These cases recognize the continuing negligent omission of duty as the proximate cause of the injury, as also in *Myers* v. *Railroad*, 119 N. C , 758 ; *Mesic* v. *Railroad*, *supra*, and *Alexander* v. *Railroad*, 112 N. C., 720.

The motion in arrest of judgment for the reason that

it was not responsive to the allegations in the complaint cannot be allowed. We presume this refers to the allegation as a question of law that the defendant railroad is not liable for the negligence of its lessee ; but this is settled in *Aycock* v. *Railroad*, 89 N. C., 321, 330, and *Logan* v. *Railroad*, 116 N. C., 940.

The refusal of the court below to set aside the verdict on account of excessive damages cannot be reviewed here. *Goodson* v. *Mullin*, 92 N. C., 211; *Whitehurst* v. *Pettipher*, 105 N. C., 40 ; *Edwards* v. *Phifer*, 120 N. C., 405.

The exceptions not specifically alluded to are without merit and cannot be sustained in any reasonable view of the case.

The judgment is affirmed.

Affirmed.