HENRY BONNELL v. THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY.

1. In actions for personal injuries, caused by railroad trains, where there are doubtful and qualifying circumstances, the question of negligence or want of proper care must be left to the jury.

2. The plaintiff will not be non-suited, unless, upon his own showing, he is guilty of negligence which contributed to the injury; nor will the verdict be set aside, unless the jury are clearly wrong in their conclusion.

3. Where a person, as he approaches a railroad crossing, with a single track and infrequent trains, sees a train with the rear towards him, going, apparently, in an opposite direction, and is deceived by appearances, and his attention distracted by the actions of persons at a distance attempting to warn him of his danger from the train which is backing rapidly and quietly towards him, and a wagon has crossed just before him, it will be left to the jury to say whether there is want of proper care.

On rule to show cause why a new trial should not be granted. The facts were as follows:

The plaintiff was a farm laborer in the employ of William L. Coleman, living at Flanders village, four miles from Succasunna, in Morris county, and was sent on the morning of December 5th, 1874, with an empty wagon and team to the Succasunna station for a load of lime. He entered the main road by the Flanders road, nine hundred and forty feet distant from the railroad, and turning southeasterly passed along at a slow trot or fast walk. It was a cold morning, and he

was sitting or kneeling in the bottom of the wagon. When about one hundred yards from the railroad, he said that he looked towards McCainsville, northeasterly, and saw the train in question, with the rear towards him, *and was deceived by appearances, supposing it was going away from the crossing, towards Dover.* This was an irregular train, with dirt-cars, and a freight-car in the rear. The regular train had passed at eight minutes after seven o'clock that morning. It was then about eight o'clock, and no other train was due upon the time-table until thirty-four minutes after ten o'clock A. M. The railroad was a branch road, leased to the defendants, with a single track, and the trains upon it were not frequent.

From the point where the plaintiff said he looked and saw the train, all the way up to the crossing, there was a clear, unobstructed view of the railroad, as far as McCainsville, and there was nothing to prevent him from seeing the train, if he had looked in that direction. When the horses were very near the track, he saw some men, who were unloading iron ore from a wagon into a freight-car, standing upon a side track, about one hundred feet from the crossing, in an opposite direction from the train. They saw the train coming towards him, and made gestures and hallooed, to warn him of his danger. He says he saw them, but misunderstood their signals, and, before he had time to reflect, the horses stepped upon the track, and the train came upon him, running backward, moving rapidly, silently, without any sound of bell or whistle, and struck him, so that he became unconscious—was seriously, and probably permanently injured.

Wesley Fancher, a witness on the part of the plaintiff, testified that he was in a butcher wagon, near the crossing; saw the train coming near the signal-post, and urged his horse across the track, because he would become frightened and unmanageable at the sound of a car-whistle. He says he heard no bell or whistle until the plaintiff's team, a short distance behind him, was struck. He did not speak to the plaintiff, nor see him, until after he was injured.

Bonnell v. Del., Lack. and West. R. R. Co.

Other witnesses of the plaintiff testified that no bell was rung or whistle blown until the collision.

Upon these facts, the defendants moved to non-suit the plaintiff, on the ground of contributory negligence.

The court refused, and the defendants' evidence was offered, proving, by the engineer and brakeman on the train, that the bell was rung all the way from the signal-post to the crossing, and by other witnesses that it was rung part of the way.

They further showed the efforts that were made by persons near the crossing to stop him, by gestures and hallooing, which he did not appear to heed or understand; that the train was moving slowly, and if the plaintiff had looked northerly, as he approached the track, there was no obstruction, or difficulty in seeing the train. The character of the injuries received, and the value of plaintiff's services, appeared in the evidence.

Upon these facts, the jury found a verdict for the plaintiff, and a rule to show cause why a new trial should not be granted was signed by the judge at the circuit.

Argued at November Term, 1876, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, DIXON and REED.

For the plaintiff, *H. C. Pitney.*

· For the defendants, *J. G. Shipman* and *Vanatta,* Attorney-General.

The opinion of the court was delivered by

SCUDDER, J. The main reason urged by the defendants' counsel for setting aside this verdict, is that, from the undisputed facts in the case, the plaintiff was guilty of contributory negligence, and that the court erred, in the first instance, in refusing to non-suit the plaintiff for this cause, and afterwards in not instructing the jury to find a verdict for the defendants.

In actions for personal injuries, the court has often non-suited the plaintiff, where it clearly appeared, from his own evidence, that he was guilty of negligence which contributed to the injury he has sustained, in such way that if he had not been guilty of the negligence, he would have received no injury by that of the defendant. Thus, if approaching a known danger, he be devoid of all care, by his own admission, or, seeing and knowing the risk, he experiment and take the hazard of injury; if he go upon a railroad track, taken there by a team in his own care, when he is asleep, or stupefied by drink, or in mere vacuity of mind; or if, seeing a train approaching, he should urge his horses to pass in front before it may reach him—such gross carelessness and want of ordinary caution are a voluntary courting of danger, and he has no right to be heard when asking redress for self-inflicted injuries. These are the kind of cases in which the plaintiff has suffered a non-suit, upon his own evidence. *Pennsylvania R. R. Co.* v. *Matthews*, 7 *Vroom* 531; *Runyon* v. *Central R. R. Co.*, 1 *Dutcher* 556; *Harper* v. *Erie Railway Co.*, 3 *Vroom* 88.

So, where such want of ordinary care, on the part of the plaintiff, is apparent, when all the evidence is given on both sides, the court will interpose, after verdict in his favor, and set it aside. *Moore* v. *Central R. R. Co.*, 4 *Zab.* 268; *Telfer* v. *Northern R. R. Co.*, 1 *Vroom* 188.

But, as it was said in *N. J. Express Co.* v. *Nichols*, 3 *Vroom* 166, where the evidence on this point is doubtful, and the inferences to be drawn from the facts are uncertain, it is the province of the jury to decide, and the case must be strong which will justify a reversal for denying a non-suit, and submitting the question of negligence to the jury. Where there are doubtful and qualifying circumstances, the question of negligence or want of proper care is a matter of ordinary observation and experience of the conduct of men, and as such, must be left to the jury, as being within their legal province. The law has said, in these cases, that the plaintiff, shall have the judgment of twelve men, and not the opinion

of one man.   *N. J. R. R. and Trans. Co.* ads. *West*, 3 *Vroom*
91;  *Weber* v. *N. Y. Central R. R. Co.*, 58 *N. Y.* 451;
*Ernst* v. *Hudson River R. R. Co.*, 35 *N. Y.* 9; *S. C.*, 39
*N. Y.* 61; *Thurber* v. *Harlem R. R. Co.*, 60 *N. Y.* 326; *West
Chester R. R. Co.* v. *McElwee*, 67 *Penn. St.* 311; *Crissey* v.
*Hestonville R. R. Co.*, 75 *Penn. St.* 83; *French* v. *Taunton R.
R. Co.*, 116 *Mass.* 537; *Craig* v. *N. Y. & N. H. R. R. Co.*,
118 *Mass.* 431; *Carland* v. *Young*, 119 *Mass.* 150; *Sher. &
Redf. on Neg.*, § 31, *h ; Wharton on Neg.*, § 385.

The fact upon which the defendants mainly relied, in this
case, was, that the plaintiff did not look up the track as he
approached, and before he attempted to cross it.   But the
plaintiff had looked when about one hundred yards from the
crossing, and saw, as he supposed, a train going in the oppo-
site direction, with the rear towards him.   He was not re-
quired, by any legal rule, to look continually until he crossed
the track.   A man of prudence might have received a fixed
impression, from the appearance of the train, that it was
going away from the station.   Having that belief, his further
attention may have been called off by the actions of the men
near the station, who were gesticulating, which he misunder-
stood.   The track was single, and but few trains passed
during the day.   If there had been several tracks, and trains
passing frequently, the case against him would be stronger.

He saw Fancher's wagon crossing just before him, and
this circumstance was likely to confirm his belief that there
was no train near.

It was for the jury to weigh all these facts, and say
whether his mistake and consequent feeling of security were
unreasonable, and manifested a want of proper care.   His
conduct might not be deemed negligent, if, in connection
with these circumstances misleading him, the jury believed
that the defendants' agents were running the train backward,
quietly, without any alarm by bell or whistle, and at an un-
usual rate of speed.   There was much testimony to that effect.
Although it was said that he was warned by the men near

the station, yet these men were not in the employ of the company. It was no part of their business to look after trains, or persons approaching the station ; nor does it appear that he heard any words they uttered, or recognized the gestures they made, as warnings to him. He says he did not understand them, and these witnesses all say that he did not appear to apprehend their meaning. He may have understood them as beckonings to come on, or they may have merely confused him, and made him inattentive. In some of the details, these facts are similar to those in Ernst v. Hudson River R. R. Co., where there were warnings given, which were misunderstood, and where, after several arguments upon conflicting rulings, there was a judgment for the plaintiff.

There were inferences to be drawn from all the facts of this case, upon the question of contributory negligence, which were proper for a jury.

The case is a very close one upon the facts, and, although it may be doubtful whether the conclusion is correct, yet the facts are not so clear, nor the jury so manifestly mistaken in their finding, that we feel constrained to set aside their verdict for this cause.

The amount of damages given is $3980. This sum seems large, but we cannot say it is too much, in the case of a man but twenty-eight years of age, who has suffered much pain, and is shattered in body and mind, so that he is permanently disabled, in the opinion of physicians and others.

The rule to show cause should be discharged, and a judgment entered for the plaintiff.