D. H. MAYES v. THE SOUTHERN RAILWAY COMPANY.

*Action for Damages—Railroads—Accident at Railroad Crossing—Instructions.*

1. It is the duty of one approaching a railroad crossing to use ordinary and reasonable care to avoid accident and to exercise his senses of hearing and sight to keep a lookout for approaching train, and if he does not do so but drives inattentively upon the track without keeping a lookout or listening for approaching trains and injury results, he is ordinarily, but not in all cases, guilty of contributory negligence.

2. In the trial of an action to recover for injuries received at a railroad crossing, it was not error to refuse to charge that though plaintiff looked and listened and did not see or hear the approaching train, yet, if he might have done so, it was contributory negligence.

3. In the trial of an action to recover for injuries received at a railroad crossing, it was not error to refuse to charge, in response to a special request by defendant, that though defendant was running its train backward on a dark night, at excessive speed, and without ringing the engine bell and without a light on the front end of the leading car, yet, if plaintiff could have avoided the injury by the use of reasonable care, the jury should find him guilty of contributory negligence, the court having already charged the jury as to the duty of the plaintiff to stop and look and listen before attempting to cross.

This was a CIVIL ACTION, tried at October Term, 1896, of the Superior Court of MECKLENBURG County, before *Brown*, *J.*, and a jury. Plaintiff sued for damages on account of personal injuries received by him, caused by a collision between a train, alleged to have been negligently arranged by defendant, and his buggy, in which he was attempting to cross Mint street, in Charlotte.

The issues submitted to the jury and the responses were as follows:

" 1. Was the plaintiff injured by the negligence of the defendant?

" Answer, ' Yes.'

" 2. Did the plaintiff by his own negligence contribute to his injury?

" Answer, ' No.'

" 3. What damages, if any, is plaintiff entitled to recover?

" Answer, ' $650.'

D. H. Mayes, plaintiff, being duly sworn, said:

" I am the plaintiff in this case, and I think the accident occurred the 29th day of May, 1895, about 11:30 at night, as well as I remember. I was going north, coming this way. The street that I was on connected with what is known as the ' Dowd road.' I was coming from Mr. Jas. Dowd's. The street that I was on was a much-travelled street. Mr. Zimmerman was with me, and before we got to the railroad we were jogging the mare along. I pulled up the mare about one hundred and fifty feet from the track. The mare was walking very slowly, and I listened and looked to see if I could hear any alarm, and could not, and then drove on in a walk. I heard her foot hit the railroad, and then I heard some one say, ' Look out.' As I looked up a box car was right on my buggy. My mare gave a quick turn, and ran up the track, and the car hit the buggy and threw Mr. Zimmerman out near the track. I went under the buggy. The buggy capsized and fell right on top of me. The buggy turned completely over when the car struck it. I fell down the embankment. The embankment was, I suppose, about six or eight feet; I am not positive about it, however. I got a very bad cut on my head, and a very bad sprain and bruise on my shoulder. The night was not bright; I should say, as well as I remember, it was a kind of dark night. There was no

light attached to the rear erd of the car that I could see.
I do not remember having seen anything but the engine
after I had gotten up.   I do not know how long I was
under the buggy.   The first thing that happened after get-
ting out from under the buggy was Mr. Zimmerman call-
ing to me to come to him, and I went to him, and he asked
me if I was not about killed.   I was bleeding very bad
from the cut in my head.   I do not think that it could
have been more than a minute or two that I was under the
buggy.   The train was running at least twelve or fifteen
miles an hour.   I saw no light at all as the train approached
me.   There was no watchman there, and never has been.
I heard no bell ringing until after I had gotten up and
started up town, and then I heard the engine way down
the track going to the passenger station.   The train was
coming from the freight depot, and backing into the pas-
senger station.   It was coming from the east and running.
west.   The cars were ordinary freight cars.   I do not
know exactly how many cars there were, but it was evi-
dently a very long train.   There must have been about
twenty or thirty cars.   A freight train makes very little
noise, and you can scarcely hear them at all.   On the
street it is open ground, but before you get to the rail-
road there are, I think, about three houses, little tenement
houses, right along the side of the road, and as you approach
the railroad you can scarcely see the track.   These houses
are built, I suppose, ten or fifteen feet apart or a little more.
After leaving Church street there is a little embankment
running out to Mint.   I stopped the mare before I got on
the track.   I could not have been travelling fast or I
would have gotten across.   My horse was making no noise
as I went along looking and listening.   As well as I remem-
ber it was a dark night.   From the point on Mint street
to the end of the cut is about one and one-half blocks.

Cross-examination : I think it was about one hundred or one hundred and fifty feet where I stopped to the track. Up to that point I had been travelling slow, not over five or six miles an hour. My mare was a good one. She could not make it in 2:30, but at that time I would say that she could make it in 2:40. The street is macadamized. The horse made very little noise walking along on it. The horse might have made a little noise, I suppose. My mare walks very slow. She had shoes on. Looking down to the left from where I checked the horse up, I could see a long distance. I have been back there again to look at the place. The house nearest to the track is about ten or fifteen feet away. I do not know exactly how far it was. The first house is a small house. There is a cut of ten or fifteen feet, and then another little house, and then another cut. Before we get to the second house from the second cut you can get a slight view of·the railroad. You cannot see the track well until you get just opposite the second little house, which is near the Episcopal church. You can see the track from a point before you get to the second house, but not a good view. After you get up to the railroad you can see down the track, but between these houses you cannot see the track well. There is an open space between the houses, and you can get a glimpse of the track, but you cannot see a long distance. I did not hear the bell ringing. I will not swear that it was not ringing. I never saw any light on top of the car, but I will not swear that it was not there. I did not see the cars until they were right on me. The first thing that I knew of any danger was when my mare wheeled suddenly around and threw me over. The car hit the buggy and upset it. When I got up the engine was two or three hundred yards away, going down towards the passenger station. I did not stay under the buggy very long.

When I got out from under the buggy Mr. Zimmerman had hold of the mare, and had pulled her out into the street. I fell over the railroad embankment, and not the street embankment. The railroad and street embankment run right together. I was knocked over the railroad and fell down the railroad embankment. I fell in on the railroad side of the embankment. I form my idea as to how fast the train was moving from the force with which it struck me. I only saw the train for a second, but I saw it long enough to see that they were going very rapidly. Mr. Zimmerman and myself were talking, I suppose, when we got along there. We were out calling that night. The cars made very little noise indeed. I have seen trains running twelve or fifteen miles an hour and make no noise. Freight cars make a certain amount of noise, but in backing in they make very little noise. I know nothing about passenger cars, but I do know that freight cars make very little noise. I suffer from a very bad sprain in my shoulder. I was two months in getting over it. When the man hollowed " Look out " I was on the track. I got on the railroad ; that is, the buggy and horse. I did not say the mare just got her head on the track. The mare and buggy both got on the track. Just as we got on the track the cars struck my buggy. I am certain that the cars struck my buggy. I came to that conclusion that night. I of course knew next day that the cars struck my buggy.———

" When the cars struck my buggy the engine was about one and a half blocks from Mint street. If there was any bell ringing it was at least one and a half blocks from where I was."

The plaintiff's testimony was corroborated by that of other witnesses.

A. C. Clark, witness for the defendant, testified :

" I was the conductor on the train that night. I was

backing my train down. We were making a transfer from the freight yard to the passenger depot. We were going along about as fast as a man walks. We had on twenty-one cars. I was about four or five car lengths from the rear end. I had one of my switchmen on the rear end of the foremost car. I was yard conductor. I was on a car four or five car lengths from the end car or rear car. Buck Sellars was one of my brakemen. He was on the extreme end of the rear car. I mean by the rear end the leading cars. He was on the front end of the leading car. He had a light sitting down by him right on top of the car. It was a common railroad lantern that we use for yard purposes. The bell was ringing. We had just crossed Tryon street, and had stopped there, and had left and was going on around to the passenger depot. Just at the time we were going across the crossing I heard Buck hollow 'Look out.' We pushed on until the car that I was on had gotten right on the crossing, and then I saw some one holding the lines hitched to a horse ; that is, I saw the horse and buggy then. We could not stop right off. The train was going down a grade. When I saw them I never thought that the horse and buggy had ever been any closer to the track than they were. I just thought that the horse had been frightened. We cut loose the engine, and came back to the point to see if there was any damage done, after we had gone to the passenger depot. I measured the distance from the buggy track to the car track, and say that the car could not have hit the buggy. I could see the track of the wheel. The whole crew were there together.

" An ordinary box car projects to the end of the ties. The engineer could not have been working steam. The train was simply rolling down the grade, without the aid of any steam. The grade was a little inclined after

you crossed Tryon street. We had stopped at Tryon street. Sellars hollowed ' Look out there'; he saw somebody approaching the train."

Isaiah Brown, a witness for the defendant, being duly sworn, said:

"I was pretty close to the railroad, going home on South Church street. I was on this side of the crossing. I was, I suppose, when I first heard the bell ringing, about 150 yards from the train. The train was up on the eastern part of the track. I was about one hundred and fifty yards away, I reckon. I continued to go on towards home, that is on South Mint. I heard some one hollow, " Look out, Look out,' and I kept on advancing towards the train, and saw the horse have his front foot about the center of the track. Then the horse turned to the left going towards the south. The train had then passed and I got on the other side of the track, and then saw the two gentlemen whom I knew. The right hand wheels of the buggy touched the track, but the left hand wheels of the buggy did not touch the track. The buggy was turned over about an eight-foot embankment."

The court charged the jury as follows:

" As to the first issue:

" If you find that the defendant's agents could have stopped the train by exercising ordinary care and reasonable diligence in time to have prevented the injury and failed to do so, it is negligence and you should find the first issue, ' Yes.'

" If you find that the defendant's train was backing towards Mint street crossing without giving the proper signal by ringing the engine bell, or without a proper light on the rear car, that is, the car nearest the crossing, or without keeping a proper lookout on said car, it is negligence and you should answer the first issue, ' Yes.'

" In order that bell-ringing be a signal it must be such as is reasonably calculated to give warning to persons crossing the Mint street crossing towards which the train was backing, and the light on the front of the leading car must be sufficient reasonably to give indication of approaching cars.

" If you find as a fact that the train could not have been stopped when the lookout man discovered the plaintiff's position, or by reasonable and ordinary care ought to have discovered it before it passed over the crossing, it would not be negligence not to have stopped the train. If you so find and shall further find that the bell was being rung so as reasonably to give notice at the crossing as the train approached the crossing and also that there was a proper lookout being kept on the leading car and a sufficient and proper light on said car, then there is no negligence, and you should answer the first issue, ' No.'

" If you find that there was a lookout man on the front end of approaching or leading car and that the lookout saw plaintiff approaching the track, the lookout had a right to suppose that the plaintiff would stop before attempting to cross, and that plaintiff would ascertain or use ordinary care in trying to ascertain if a train was approaching and under such circumstances the train lookout had a right to suppose that plaintiff would stop until it was clearly apparent that plaintiff did not intend to stop, and if it was then too late to stop the train, and if the bell was being properly rung and there was a proper light on the leading car, there would be no negligence and you should answer the first issue, ' No.'

" Further, if you find that Buck Sellars, the brakeman, who is alleged to have been on the lookout on the leading car, saw plaintiff fifty feet from the track, he had a right to suppose plaintiff could see him and the train also, if

MAYES *v.* RAILROAD COMPANY.

there was a proper light on the leading car and a proper bell ringing, and this brakeman had a right to suppose plaintiff would stop and the brakeman was not compelled to signal the train to stop until it was apparent that plaintiff had not seen the train and did not intend to stop, and if you so find the facts there would be no negligence and you should answer the first issue, ' No.'

" As to the second issue :

" As the plaintiff approached the track driving his horse and buggy, especially at night, it was his duty to use ordinary and reasonable care to avoid accident. It was his duty to exercise his senses of hearing and sight, to keep a lookout for approaching trains, and if he did not exercise his sense of hearing and sight, and inattentively drove on the track without keeping a lookout or listening for approaching trains, it is contributory negligence, and if you so find you will answer the second issue, ' Yes.'

" It was the duty of plaintiff to both look and listen for approaching trains as he approached the track, and if he failed to do either and was thereby hurt it is contributory negligence, and you will answer the second issue ' Yes.'

" If the plaintiff by ordinary precaution could have seen the train, and without taking ordinary caution drove on the track and was injured, it is contributory negligence and your duty if you so find, to answer the second issue ' Yes.'

" The law requires of all persons when approaching and crossing railroad tracks that they exercise ordinary care and precaution, and a failure to do so will contribute to their own injury if they are accidentally injured.

" Therefore if you believe from the evidence that plaintiff must have heard or must have seen the approaching train, and instead of stopping until it passed, undertook

MAYES *v.* RAILROAD COMPANY.

to drive across the track in front of it, it is contributory negligence.

"(*a*) If you find from the evidence that plaintiff kept a lookout as he approached the track, pulled his horse down to a walk before reaching the track and some fifty yards before reaching it, and listened and looked for the train as he approached the track, and not seeing or hearing any, and then started to drive across the track and was injured, there is no contributory negligence and you will answer the second issue 'No.' (*b*)"

And to so much of the charge as is between (*a*) and (*b*) defendants excepted.

The burden of proof on the first issue is on the plaintiff. On the second issue the burden of proof is on the defendants.

Among other instructions prayed for by defendant were the following:

"5. If the plaintiff could have seen the approaching train by looking, in time to have averted the injury, and did not see it, it is the same as if he had not looked, and the answer to the second issue should be 'Yes.'"

This instruction was refused and defendant excepted.

"6. If the plaintiff could have heard the approaching train by listening and did not hear it, it is the same as if he did not listen, and the answer to the second issue should be 'Yes.'"

This instruction was refused and defendant excepted.

"7. It was the duty of plaintiff both to look and listen and to see and hear, if he could have done so, and if he failed in any of these requirements the answer to the second issue should be 'Yes.'"

This instruction was refused and defendant excepted.

"9. If the jury should believe from the evidence that defendant was running its train without ringing the bell

and without a light on the front end of the leading car, and at an excessive rate of speed, still if the plaintiff could have avoided the injury by the use of reasonable care, he cannot recover and the answer to the second issue should be ' Yes.' "

This instruction was refused and defendant excepted.

" The jury found all the issues in favor of the plaintiff and assessed his damages at six hundred and fifty dollars ($650)."

There was judgment for plaintiff upon the verdict and defendant appealed, assigning as errors :

"1. That the court charged the jury as noted in defendant's first exception."

' '2. That the court erred in refusing to give defendant's instructions marked 5, 6, 7 and 9."

*Messrs. Jones & Tillett,* for plaintiff.

*Messrs. George F. Bason* and *J. W. Keerans,* for defendant (appellant).

CLARK, J.: The exception to the charge, and the first three exceptions for refusal to charge, present substantially the same proposition—that, though the plaintiff looked and listened, and did not see nor hear the approaching train, yet, if he might have done so, it is contributory negligence. If by this it was proposed to ask the court to charge that the plaintiff was not excused if he looked and listened carelessly and negligently, this should have been pointedly and plainly asked. Besides, it was covered substantially by the charge given, that " it was the duty of the plaintiff to use ordinary and reasonable care to avoid accident, and to exercise his senses of hearing and sight, to keep a lookout for approaching trains, and if he did not, and drove inattentively on the track, without keeping a

lookout or listening for approaching trains, it is contributory negligence." This charge, repeated three times in different phases, was really erroneous towards the plaintiff (the appellee), in that it makes him guilty of contributory negligence for not looking and listening in all cases, even if no light was on the front end of the moving train (at night), and no bell rung. Yet, if such was the case (and the plaintiff both alleged it was and offered proof of it), the failure of the plaintiff to look and listen at a crossing was not contributory negligence. *Hinkle* v. *Railroad Co.*, 109 N. C., 472; *Russell* v. *Railroad Co.*, 118 N. C., 1098.

But we do not understand the defendant to complain that the jury was not instructed that the looking and listening must be done with proper care, but his proposition is that, if the plaintiff looked and listened and might have seen or heard and did not see or hear, as a proposition of law he did not look and listen. That, however, is a matter of fact, and not a proposition of law. By " looking and listening " the jury must have understood, under the terms of the charge, " looking and listening with proper attention." The syllogism of the defendant is something like this: " Though 3 plus 4 are 7, yet, if they make 8, they are not 3 plus 4." True enough, but the question of fact is whether there was " 3 plus 4," and that determines whether the sum is 7 or not. The defendant is traveling in a circle. If the plaintiff looked and listened with care, he saw or heard the approaching train if he could have done so; and if he did not see and hear it, when he might have done so, then he did not, with proper attention, look and listen. *Pickett* v. *Railroad Co.*, 117 N. C., 616, and several cases since, have settled that, though an engineer does not see a man lying on the track, the company is liable if, with reasonable care, the engineer could have seen him in time to avoid injury. But that is based on the engineer's negligence in

119—49

not keeping a proper lookout. Here, the court told the jury that the plaintiff was guilty of contributory negligence if he went on the crossing without keeping a proper lookout and listening. If the engineer keeps a proper lookout, and is unable to see the man lying on the track till too late to avoid injury, there is no negligence on his part and no liability on the company.

The only other exception is that the court did not give an instruction asked that, though the defendant was running its train (backward on a dark night) at an excessive speed, and without ringing the bell, and without a light on the front end of the leading car, still, if the plaintiff could have avoided the injury by the use of reasonable care, the jury should find him guilty of contributory negligence. This was in substance given by the court in its charge on the second issue, in stating the duty of the plaintiff to stop, look, and listen before attempting to cross. And, in so doing, there was error as against the appellee, as already pointed out, by not qualifying it by adding, as in *Hinkle* v. *Railroad Co.*, and *Russell* v. *Railroad Co.*, *supra*, that the plaintiff would not be guilty of contributory negligence in going upon the railroad crossing without looking and listening, if the defendant did not sound the whistle or ring the bell, or, in the night-time, did not have a light on the front end of the train, the proximate cause in such cases being the failure to give warning. It is not negligence in a traveler to cross the track, unless he disregards a warning not to cross which he might have seen or heard with proper care.

No Error.