## COOPER v. RAILROAD.

(Filed December 12, 1905).

*Railroads—Crossings—Duty of Railroad and of Traveler—Contributory Negligence—Instructions — Evidence — Inventory—Annual Account.*

1. Both the railroad when approaching a public crossing and the traveler on the highway are charged with the mutual duty of keeping a careful lookout for danger, and the degree of diligence to be used on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring to perform his duty.

2. In an action for damages for the alleged negligent killing of plaintiff's intestate, an instruction that relieved the traveler of all obligation to look and listen when there had been a failure on the part of the defendant to give the ordinary signals, where there was evidence tending to show that there was an unobstructed view, is erroneous, and the fact that the court in other portions of the charge imposed on the plaintiff the obligation to look and listen whenever the view was unobstructed, does not help the matter.

3. Evidence tending to show that the intestate was in a covered wagon and that he drove on the crossing without any stop whatever and with the wagon cover down on the side from which the train approached and at a point just on the edge of the wagon road and 13 feet from the center of the railroad track one could see down the track from 500 to 1,200 feet, in the direction from which the trains approached, was sufficient for the consideration of the jury on the issue of contributory negligence.

4. A traveler on the highway, before crossing a railroad track, as a general rule, is required to look and listen to ascertain whether a train is approaching; and the mere omission of the trainmen to give the ordinary or statutory signals will not relieve him of this duty.

5. Where the view is unobstructed, a traveler, who attempts to cross a railroad track under ordinary and usual conditions without first looking, when, by doing so, he could note the approach of a train in time to save himself by reasonable effort, is guilty of contributory negligence.

140——14

6. Where the view is obstructed, a traveler may ordinarily rely upon his sense of hearing, and if he does listen and is induced to enter on a public crossing because of the negligent failure of the company to give the ordinary signals, this will usually be attributed to the failure of the company to warn the traveler of the danger, and not imputed to him for contributory negligence.

7. There may be certain qualifying facts and conditions which so complicate the question of contributory negligence that it becomes one for the jury, even though there has been a failure to look or listen, and a traveler may, in exceptional instances, be relieved of these duties altogether as when gates are open or signals given by a watchman and the traveler enters on the crossing reasonably relying upon the assurance of safety.

8. In an action to recover damages for the alleged negligent killing of plaintiff's intestate, plaintiff's inventory of the personal property of her intestate and her annual account as administratrix are inadmissible for the purpose of showing intestate's capacity to earn and accumulate money.

CLARK, C. J., and CONNOR, J., dissenting.

ACTION by Mary W. Cooper, Administratrix of W. A. Cooper, v. North Carolina Railroad Co., to recover damages for alleged negligent killing of plaintiff's intestate, heard by *Judge E. B. Jones* and a jury, at April Term, 1905, of the Superior Court of CASWELL.

The ordinary issues in such actions were submitted. There was evidence of plaintiff tending to show that intestate was killed in attempting to drive his wagon over defendant's road at a public crossing, and by reason of the negligent failure on the part of defendant in giving the ordinary and usual signals at crossings, and that such negligence was the proximate cause of the injury.

There was evidence of defendant tending to show that the ordinary and usual signals were given; and that the intestate was guilty of contributory negligence in driving on the crossing without having looked and listened for an approaching train; and when, if he had looked, the approach of the train

might have been seen in time to have avoided the collision and prevented the death of the intestate.

In response to prayer for instructions by plaintiff, the court on the issue as to contributory negligence, charged the jury as follows:

"4. It is the duty of a railroad company to give the public due notice of the approach of its trains to a public crossing so that travelers may stop their teams, if necessary, and stay off the crossing until the train has passed. The train, if it gives the proper warning of its approach, and the railroad company is not otherwise at fault, is entitled to the right of way in preference to a traveler on the highway. The traveler has the right to expect such warning to be given to him and he must look and listen when approaching a crossing, and his failure to look and listen when such warning is given is negligence, and if such failure should cause his death, no recovery could be had for it. But when the train does not give timely warning and reasonable warning of its coming, it is not contributory negligence in a traveler to go upon the track without looking and listening for the approach of a train, if he exercises that prudence and care which a prudent man would exercise under the circumstances and if the injury resulting is attributable to the negligence of the railroad company in failing to give the signals, for such failure would be deemed the proximate cause of the injury, if the jury should find from the evidence that with proper warning the traveler would not have attempted to cross. Therefore, if from the evidence you find that the railroad company failed to give timely warning of its approach to the crossing, by sounding the whistle or ringing the bell, and also find that the plaintiff's intestate went upon the crossing without looking and listening, his failure to look and listen under such circumstances would not be the proximate cause of his death if, with the proper warning, he would not have gone upon the track, and if from the evidence you find such to be the

facts, you will answer the second issue 'no,' that is that the plaintiff's intestate was not guilty of contributory negligence."

To this charge the defendant duly noted an exception. The court, in substance, repeated this statement in its direct charge to the jury. Verdict and judgment for the plaintiff; defendant excepted and appealed.

*Kitchin & Carlton* for the plaintiff.
*Manly & Hendren* for the defendant.

HOKE, J., after stating the case: The first portion of the instruction above quoted, which states the obligation on the railroad to give adequate warning when approaching a public crossing and the obligation on the traveler to look and listen in like case, is correct. As stated in *Improvement Co. v. Stead*, 95 U. S., 161: "Both parties are charged with the mutual duty of keeping a careful lookout for danger, and the degree of diligence to be used on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring to perform his duty."

The remaining portion of the instruction, however, addressed more particularly to the feature of contributory negligence, by fair and reasonable intendment, can only mean that though a traveler in approaching a railroad track is required to look and listen, yet this obligation is not upon him, nor will the consequence be imputed to him, if he failed to look and listen when such failure was caused by the negligent failure of the railroad train to give the necessary signals; and this, where there was evidence tending to show that if he had looked he could have seen the approaching train in time to have avoided the collision, or at least to have saved himself by the exercise of reasonable effort. In this we think there was error which entitles the defendant to a new trial.

It relieves the traveler of all obligation to look and listen when there is failure on the part of the defendant to give

the usual and ordinary signals, and places the entire responsibility for such a collision on the railroad company. It would, in effect, practically eliminate the defense of contributory negligence when there had been a negligent failure to give the warning; for ordinarily it is only by looking and listening that a traveler can inform himself of dangerous conditions. This is not a just principle by which the rights of parties in cases like the present should be determined, nor is it supported by any well considered authority.

The general rule is well stated in Beach on Contributory Negligence, as follows: "In attempting to cross, the traveler must look and listen for signals, notice signs put up as warnings and look attentively up and down the track, and a failure to do so is contributory negligence which will bar a recovery. A multitude of decisions of all the courts enforce this reasonable rule. It is also consonant with right, reason and the dictates of ordinary prudence, and so much in line with the ordinary care which the average of mankind display in the daily routine of life, that it would seem to be scarcely dependent upon the authority of decided cases in the law courts. As a general rule the omission of the traveler to look and listen is so clearly a want of ordinary care that it constitutes contributory negligence as a matter of law, but it cannot be said that such failure will always defeat a recovery, for circumstances may and sometimes do exist which excuse the omission." And the rule so stated is in accord with the decisions in this and other jurisdictions. *Randall v. Railroad,* 104 N. C., 410; *Mayes v. Railroad,* 119 N. C., 758; *Mesic v. Railroad,* 120 N. C., 490; *Laverentz v. Railroad,* 56 Iowa, 689; *Nixon v. Railroad,* 84 Iowa, 331; *Davis v. Railroad,* 47 N. Y., 400; *Rodman v. Railroad,* 125 N. Y., 526; *Railroad v. Brownell,* 39 N. J. L., 189.

The rule is so just in itself and so generally enforced as controlling, that citation of authority is hardly required. But as the matter has been very earnesty debated, it is con-

sidered well to quote from some of the decisions illustrative of the obligation on the traveler to look and listen, and some of the exceptions where its violation was not held contributory negligence as a matter of law.

In *Randall's case, supra,* it is held to be the duty of a person approaching a railroad track to take every prudent precaution to avoid a collision, and it is the duty of the engineer to sound the whistle or ring the bell at a reasonable distance from the crossing in order to enable travelers to avoid danger.

In *Mayes' case* (*Clark, J.,* delivering the opinion,) it is held to be the duty of one approaching a railroad crossing to use ordinary and reasonable care to avoid accident, and to exercise his senses of hearing and sight to keep a lookout for an approaching train; and if he does not do so, but drives inattentively upon the track without keeping a lookout or listening for approaching trains, and injury results, he is ordinarily but not in all cases, guilty of contributory negligence.

In *Mesic's case,* Mr. *Justice Montgomery,* speaking for the court, said: "The rule is general and usual that whenever an approach to a public crossing over a railroad is made by anyone in charge of a wagon and team, such person is bound to look and listen for approaching trains and take every proper precaution to avoid a collision; and this is so even though the approach be made at a time when no regular train is expected to pass; and in case the driver fails to look and listen and to take proper precaution to avoid a collision, and one does occur, the plaintiff cannot recover, even though the defendant was negligent in the first instance.

In *Laverentz's case, supra,* it is held to be the rule that a person who voluntarily goes on a railroad track at a point where there is an unobstructed view of the track and fails to look or listen for danger, cannot recover for an injury which might have been avoided by so looking and listening; but when the view is obstructed or other facts exist which tend to complicate the question of contributory negligence, it becomes one for the jury.

In *Nixon's case, supra,* it is held that one, who in full possession of his senses and without having his attention diverted from any cause passes over a railroad crossing without looking in both directions to see if there is an approaching train, is guilty of contributory negligence and will not be entitled to recover for injuries received from a passing train, though no whistle was sounded nor bell rung from the engine as required by law. *Rothrock, J.,* delivering the opinion, said: "It is true there are exceptions to this rule. There may be such circumstances surrounding the traveler as that his failing to look and listen may exonerate him from the charge of contributory negligence. The traveler, for instance, may be placed without his fault, in some dilemma, or some place of danger, where the exigencies of the situation and an emergency may excuse him from going on the track without looking and listening. These circumstances are so varied that they cannot be cited or commented upon in an opinion without unduly extending the subject. They involve obstructions on the track, which prevent an approaching train from being seen by the traveler; and where there are several tracks and trains running on them in different directions, and one train is obscured by another, the fact that the railroad track is in a deep cut and trains cannot be seen by a traveler approaching the crossing, or trains following each other in close proximity, which may serve to confuse the traveler and numberless other circumstances from which the jury may be authorized in finding that the traveler exercised the precaution which an ordinarily prudent person would exercise under the same circumstances."

In *Rodman's case, supra,* it is held that a pedestrian, who crosses a railroad track, must, in the absence of circumstances excusing it, look in each direction and ascertain whether a train is approaching. He may not omit this in reliance upon the performance by the railroad of its duty to give reasonable notice of the approach of the train; and if he does

omit it, the neglect of the company to discharge its duty will not relieve him from the imputation of negligence. *Andrews, J.*, further said: "If in case of an accident at a crossing it appears that the person injured did look for an approaching train, it would not necessarily follow as a rule of law that he was remediless because he did not look at the precise place and time when and where looking would have been of some aid. Many circumstances might be shown which could properly be considered by the jury in determining whether he exercised due and reasonable care in making his observation; the presence of other imminent dangers, the raising of gates erected by the company to guard the highway, giving assurance that the crossing was safe; these and similar circumstances appearing, they may be considered in determining whether the person injured, who did in fact look and listen before attempting to cross the track, fairly discharge the duty imposed upon him, although it should appear that if he had looked at another instant of time, or had looked last in the direction from which the train was approaching, he would have seen it."

It will be observed that the circumstances which may at times excuse the failure of the traveler, who has entered on a railroad crossing, to note the approach of a train, usually arise where the view is obstructed, or in the presence of some imminent danger or emergency sufficient to divert the attention of a person of reasonable fortitude and self-possession, or where one has entered on the crossing under an express or implied invitation of the company's employees giving reasonable assurance of safety.

The last instance more usually occurs at stations where a way has been left open by the company across other tracks for an approach to the station or train, or at much frequented crossings where there are gates raised or an employee charged with the duty has satisfied the traveler that he may cross in safety, and has no application here.

The general rule is that the traveler is required to look and listen for danger, and where there is an unobstructed view he is not relieved of the obligation by the fact that the train has failed to give the ordinary signals of its approach.

The error in the above charge consists in relieving the plaintiff's intestate from all obligation to look and listen, if his not doing so was caused by the negligent failure of the defendant to give proper warnings, where there was evidence tending to show that there was an unobstructed view which would have enabled the intestate to see the train in time to have saved himself by the exercise of reasonable effort.

It is submitted in support of this charge that the objectionable feature is qualified or eliminated by the use of the words "if he exercised that prudence and care which a prudent man would use under the circumstances;" and further "that the failure to look would not be the proximate cause of the injury, if the jury should find from the evidence that with the proper warning the traveler would not have attempted to cross," and it is argued that by reason of these qualifying words, the charge may be referred to certain testimony to the effect that the view was obstructed. Unfortunately for this position, and for the intention here imputed to the judge below, he puts his own, and, as we interpret it, an entirely different construction upon these words, for in his conclusion and just after using them, he says: "Therefore if from the evidence you find that the railroad company failed to give timely warning of its approach to the crossing by sounding the whistle or ringing the bell; and also find that the intestate went upon the crossing without looking or listening, his failure to look and listen would not be the proximate cause of his death, if with the proper warning he would not have gone upon the track."

It is true the court in several other portions of the charge imposes on the plaintiff the obligation to look and listen whenever the view was unobstructed, but this does not help

the matter. Standing apart, the positions are in absolute conflict, and the only way to reconcile them and give each any significance would be to annex the erroneous proposition to the more correct one wherever the same occurs.

Again it is contended that the burden was on the defendant to establish contributory negligence; that there was no evidence tending to show contributory negligence sufficient for the consideration of a jury, and for this reason any error in the charge on that issue should be considered as harmless and immaterial. But this position cannot be sustained. Both the evidence on the conduct of the intestate and as to the physical conditions and placing of the occurrence are against it. There was evidence of the defendant tending to show that the intestate was in a covered wagon and that he drove on the crossing without any stop whatever, and with the wagon cover down on the side from which the train approached.

Henry Flintop, on pp. 38 and 39 of the record, testified that he "was in the wagon, going towards Scarlet crossing; while near a branch Cooper's wagon passed the witness and continued up the hill to the crossing; noticed the wagon of intestate nearing the railroad and wondered why they did not stop the team; Cooper was driving; the wagon sheet was down on the right side; the wagon did not slacken its speed or stop, but went right on the crossing; was looking at the wagon all the time."

There was also evidence to the effect that at a point just on the edge of the wagon road and thirteen feet from the center of the railroad track, one could see down the railroad from 500 to 1200 feet in the direction from which the train approached, and photographs were in evidence giving a picture of the view from that point. This was on the edge of the county road, and it may have been taken from that point in order to give the photographer an opportunity to present a picture of the county road where it approached the crossing, as well as the crossing itself. If the camera had been placed

in the center or right of the county road, the view down the railroad would have been shortened some, but would still be sufficient to require that the question should be submitted to the jury as to whether the intestate could, by looking, have noted the train's approach in time to have saved himself by reasonable effort, and with the obligation to look upon him.

There was both contradictory and impeaching testimony for the plaintiff on this question, but the defendant was entitled to have this view presented under a proper and correct charge.

We are further referred to several decisions in this State which, it is argued, are contrary to our present opinion, but none of them, we think, sustain the position for which they are cited. While the headnotes of the different cases may be at times too general, both these and the language of the judge delivering the opinion must be taken in connection with the facts admitted or established, or at least in evidence and assumed to be true, upon which they are predicated; and they are only to be regarded as authoritative decisions when so construed and applied.

Thus in *Hinkle's case,* the plaintiff testifies, on page 478, that the plaintiff and his father were on the county road in a covered wagon, and as they traveled along the road he looked out of the wagon two or three times to see if the train was coming; and when they had gone down the hill within about twenty yards of the crossing, he stopped the wagon and listened. The plaintiff then got on the cross pieces of the shaft and held to the wagon with one hand while he rested the other on the horse's rump, and, as his father drove on, he looked and listened, but neither saw nor heard an approaching train.

In *Alexander's case,* 112 N. C., 720, the view of the track was shut off by cars, etc., and the ordinary noise of the moving train was deadened by the operation of an adjacent cotton factory, etc. The plaintiff testified that before attempting

to cross the track he pulled up his horse and listened to hear if there was any approaching train, and, hearing no bell, he ventured on the track and was hurt; that he had heard the bell there, prior to that time, as a warning, etc. There was also an ordinance requiring trains to sound bells at crossings.

In *Russell's case,* 118 N. C., 1098, the evidence was not set out, but the writer has examined the records and finds that the plaintiff testified that he both looked and listened, and failed to see or hear any train, and drove on the track only after having done this. There was also testimony in this case to the effect that the plaintiff, who was in a buggy, had crossed one railroad track, and was between that and another which she was approaching, when the horse took fright, and her husband, who was driving, lost control over him; and, further, there were some crossties between the roads which may have partially obstructed the view. Here was testimony that the plaintiff both looked and listened; that the occupants of the buggy were in the presence of an emergency, and further there was evidence tending to show that the view was partially obstructed.

In *Norton's case,* 122 N. C., 910, the plaintiff stopped, looked and listened at a distance of sixty feet from the track, the nearest point where the view was open to him, and not seeing or hearing any train and relying on the signals he had a right to expect and which the defendant negligently failed to give, he drove on the track and was injured by a train running at an unlawful rate of speed. Here the plaintiff had looked at the only place where looking would have availed him.

In *Mesic's case, supra,* the distinction here dwelt upon is adverted to by *Mr. Justice Montgomery.* After laying down the obligation on the traveler to look and listen, even though the railroad may have been negligent, he proceeds: "The rule, however, does not prevail where to look would be useless on account of obstructions, natural in themselves, or such as had been placed by accident or design by the company's

employees on their tracks   *   *   *   and when at the same time the engineer had failed to sound the whistle or ring the bell for the crossing, and in consequence of which failure the plaintiff had been induced to go upon the track and take the risk."

In none of these cases cited and relied upon is the person injured or killed relieved of the obligation to look and listen when the proper and prudent exercise of sight or hearing would have enabled him to save himself by avoiding a collision, and a correct deduction from these and the other cases seems to be. :

(1) That a traveler on the highway, before crossing a railroad track, as a general rule, is required to look and listen to ascertain whether a train is approaching; and the mere omission of the trainmen to give the ordinary or statutory signals will not relieve him of this duty.

(2) That where the view is unobstructed, a traveler, who attempts to cross a railroad track under ordinary and usual conditions without first looking, when, by doing so, he could note the approach of a train in time to save himself by reasonable effort, is guilty of contributory negligence.

(3) That where the view is obstructed, a traveler may ordinarily rely upon his sense of hearing, and if he does listen and is induced to enter on a public crossing because of the negligent failure of the company to give the ordinary signals, this will usually be attributed to the failure of the company to warn the traveler of the danger, and not imputed to him for contributory negligence.

(4) There may be certain qualifying facts and conditions which so complicate the question of contributory negligence that it becomes one for the jury, even though there has been a failure to look or listen, and a traveler may, in exceptional instances, be relieved of these duties altogether, as when gates are open or signals given by watchman, and the traveler enters on the crossing reasonably relying upon the assurance of safety.

None of these positions, however, justify the charge given in the case, which as stated, withdraws all obligation either to look or listen when there has been a negligent failure to give the ordinary warnings, even though there was evidence tending to show there was an unobstructed view.

There was also pressed upon our attention a ruling of the court on a question of evidence, and as the cause goes back for a new trial, we deem it well to determine the matter.

Defendant offered exhibit A, being the plaintiff's inventory of the personal property of the deceased, and exhibit B, being the annual account of plaintiff, as administratrix of the intestate, for the purpose of showing the intestate's capacity to earn and accumulate money. The proposed evidence was excluded by the court and defendant excepted. If these papers should show a large estate, there are so many ways by which it could be explained otherwise than by the capacity of the deceased to accumulate money, and if it is small, there are so many and various ways it could be accounted for, consistent with the highest capacity to earn and acquire, that these admissions, we think, would tend rather to confuse than aid the investigation, and would open up a field of inquiry entirely too extensive and often foreign to the issue. We hold the papers to be irrelevant, and affirm the ruling of the trial judge on that question.

For the error in the charge above pointed out there will be a new trial on all the issues and it is so ordered.

New Trial.

CLARK, C. J., dissenting: In the first part of the fourth instruction given for the plaintiff, the court charged upon the issue of contributory negligence that the traveler "must look and listen when approaching a crossing, and his failure to look and listen when such warning (by the railroad) is given is negligence, and if such failure should cause his death, no recovery could be had for it." The court then added: "But

when the train does not give timely and reasonable warning of its coming, it is not contributory negligence in a traveler to go upon the track without looking and listening for the approach of a train, if he *exercises* that prudence and care which a *prudent man* would under the circumstances, and if the injury resulting is attributable to the negligence of the railroad company in failing to give the signals, such failure would be deemed the proximate cause of the injury, *if the jury should find from the evidence that with the proper warning the traveler would not have attempted to cross."* This does not withdraw from the jury the duty of the traveler to look and listen, but simply leaves it to the jury to find, upon the facts of this case, whether the proximate cause of the injury was the failure of the deceased to look and listen, or was it attributable to the failure of the engineer to give a warning signal.

Every instruction must be taken in connection with the context and the evidence in the case. Here, in this fourth instruction, the judge expressly told the jury that one "must look and listen when approaching a crossing;" and further, he charged them in response to the fourth request of the defendant, that if the defendant failed to give a signal on approaching the crossing, this did not relieve the plaintiff's intestate of his duty to exercise the senses of sight and hearing and to take reasonable precautions to avoid accidents," and that if he did so fail to use his senses, the jury should find the issue of contributory negligence "yes," notwithstanding the negligence of the defendant in failing to give the signal. This is elaborated and more fully given in response to the defendant's prayers 5, 6, 7, 8, 9, 10 and 14, which are as clear and as strong as the defendant's counsel asked or could ask, and in substance that instruction was given to the jury no less than ten times in the charge or in the prayers given at the request of the defendant.

It is clear not only that the judge did not eliminate the

duty of the intestate to look and listen, but that there being occasions when the failure to look and listen could not contribute to the injury, as when if he had looked he could not have seen, and if he had listened he could not have heard, the judge in the above selected paragraph of the plaintiff's fourth prayer was simply submitting to the jury (as he should have done) the question of proximate cause, whether on the facts of this case, if the deceased did not look and listen it contributed to the injury, or was such injury caused by the defendant's failure to sound the whistle or ring the bell.

The evidence was that the county road crossed the railroad where the cut was 18 to 20 feet deep. Necessarily there was a bluff which would cut off the view of the approaching train from a wagon in the road. The engineer testified that he was running 40 to 50 miles an hour. He further said: "When I was 100 yards away I could not see the mules or the county road," and that he was only 40 or 50 yards away when he did see them. Of course if the engineer, sitting several feet above the track, could not see the mules when 100 yards away and did not see them till 40 or 50 yards away, the deceased who was in the wagon, down in the road and several feet behind the mules, could not see the engine that far off by reason of the same bluff. The court, therefore, properly told the jury that if the train did not give timely warning "it is not contributory negligence in a traveler to go upon the track without looking and listening, if he exercises that *prudence and care which a prudent man would exercise under the circumstances.*" He had told them that prudence required the traveler ordinarily to look and listen, but in this case, upon the engineer's evidence, if the intestate had looked he could not have seen, and upon the weight of the evidence, if he had listened he could not have heard, for eleven witnesses who were in position to hear it, testified that no signal was given, and the court was favorable to the defendant in requiring that the intestate should in all cases "exercise that prudence

and care which a prudent man would exercise under the circumstances.

It is true a photograph is sent up in the record by the defendant, and the photographer, witness for defendant, testified that at the point where it was taken the train could be seen 1,000 feet away. But on cross-examination he says: "I did not take a picture * * * from a point where a man would be crossing the track of the road. I was 13 feet from the center of the railroad track in the *outer edge* of the public road." Why was it taken there and not in the public road where the intestate must have been sitting in his wagon when the heads of his mules were at the track? The engineer's testimony and a glance at the photograph will show the reason. In the road, where the intestate was, the bluff hid him so that even his mules could not be seen by the engineer 100 yards away, and hence he could not see the engineer, whereas on the outer edge of the public road, the angle of vision not being cut off by the bluff, would perhaps permit a view down the railroad track for 1,000 feet. The evidence shows that the public road was 18 feet wide. The deceased, sitting on the right hand side of the wagon, could not see through the bluff, but the photographer, on the left hand outer edge of that road, could see down the track.

The charge was as favorable as possible to the defendant. In *Mayes v. Railroad,* 119 N. C., 770, it is said: "It is not negligence in a traveler to cross a track unless he disregards a warning in crossing which he might have seen or heard with proper care." In *Russell v. Railroad,* 118 N. C., 1109, it is said: "The plaintiff had a right to expect that the company would not omit to give the usual alarm, and was not culpable for acting upon that supposition."

"It is the duty of a railroad company to give reasonable and proper warning for the protection of travelers on the highway, when its trains are approaching a highway crossing, and a *traveler has a right to presume that this duty will be*

140—15

*performed* and reasonable warning given." 8 Am. & Eng. Enc. (2 Ed.), 408, citing *Railroad v. Cody,* 166 U. S., 606, and numerous other cases. Where the view is obstructed "the duty of the company to give notice is more imperative than at other places along its route." *Ibid.,* and cases there cited in note 4. The omission to do this "is negligence *per se," ibid.,* 416; and "the question whether the failure to ring a bell or sound a whistle was the cause of the injury sustained is a question of fact for the determination of the jury." *Ibid.,* 417, and numerous cases cited in note 1. This was the identical question which the judge submitted to the jury in the part of the fourth instruction given for the plaintiff, which is here objected to. "Failure to stop, look and listen is not contributory negligence *per se,"* and is not negligence at all when the traveler could not have seen or heard. 7 Am. & Eng. Enc. (2 Ed.), 432 and 433, with citation of numerous authorities.

The judge in substance told the jury that it was the duty of the defendant to ring the bell or sound the whistle for the crossing, but that if the engineer failed to do so, this would not absolve the traveler from the duty of looking and listening, and if the intestate failed to do so it would be contributory negligence, unless they found that in fact the failure to look and listen could not contribute to the injury. That was correct, certainly in this case where, if the intestate had looked, the bluff would have prevented his seeing, and if he had listened he could not have heard a signal which it was testified by many was not given. The court further charged that in all cases one crossing a railroad track is required to use "that prudence and care which a prudent man would exercise under the circumstances," and there was evidence that the intestate did stop his wagon, and presumably he looked and listened. Only one witness, a colored man, testified that he did not stop, and five respectable men testified that such witness was not there on that occasion, and neither

he (nor any other) testified that the deceased did not look and listen. The judge left the question of proximate cause fairly to the jury and I see no error of which the defendant has any cause to complain. *Hinkle v. Railroad,* 109 N. C., 473; *Alexander v. Railroad,* 112 N. C., 720; *Russell v. Railroad,* 118 N. C., 1108; *Mayes v. Railroad,* 119 N. C., 758; *Mesic v. Railroad,* 120 N. C., 491; *Norton v. Railroad,* 122 N. C., 935. *Hinkle's, Russell's* and *Mayes' cases* all say that the traveler is not guilty of contributory negligence if his going upon the track is induced by the negligence of the defendant.

But suppose the jury believed Plintoff, he does not undertake to say that the intestate did not look and listen, but says that the wagon did not slacken its speed or stop. If true, was the failure to stop sufficient for the jury to reasonably infer that the intestate did not use due care and that such failure to stop was the proximate cause of his death, when no warning was given? His Honor certainly could not properly have instructed the jury to return an affirmative answer to the issue of contributory negligence.

But the defendant assumes that the intestate failed to look when at a distance of 13 feet from the track, and insists that such failure was the proximate cause of the injury. This contention of the defendant was clearly stated by His Honor in giving the defendant's instructions, and was found against the defendant. The evidence does not show that the intestate, when 13 feet from the track, could have seen the train. The evidence does not show that when the intestate was 13 feet from the track the train was 1,000 feet from the crossing. The evidence does not show that the intestate failed to look, and the evidence does not show that after the intestate could have seen the train the accident could have been avoided. On the contrary, the evidence shows that when the intestate could have seen up the track, his mules must have been partly on the track, and that at that time the train was in 50 yards

of the crossing running nearly a mile a minute. The evidence does not show what the mules did, but they escaped, while the wagon was demolished, the engine striking its front wheels. An occupant of a wagon is about 10 feet behind the heads of his team, so that when he is within 10 feet or even within 13 feet of the center of the track, his mules are in the act of crossing it. It would seem unreasonable to hold that, as matter of law, a traveler, whose team is in the act of crossing with a fast train already within 50 yards of him, when he could first see it, even if no excitement seized him or his mules in this sudden danger, had the opportunity thereafter and could be reasonably expected to avoid a collision.

In view of the great increase of the country in population and wealth, with the consequent vast increase of traffic, both upon the public roads which are the inheritance of the people and also upon the railroads operated by corporations which are under very slight regulation by the public, the number of people killed or maimed at the crossing of public roads on the same grade by railroads running at a speed formerly unknown, now mount up into many thousands annually in this country. Throughout Europe, except perhaps in Russia, no railroad is permitted to cross a public road on the same grade, but must either pass under or over the public road. This avoids the vast and deplorable loss of life which occurs in this country at such crossings, and similar statutes will doubtless be enacted at no distant day in this country, when such cases as the present will cease to come before the courts. In New York, years ago, such statute was enacted, applying, however, only to crossings to be laid out thereafter. In Connecticut, a statute was enacted forbidding any grade crossing whatever, and requiring all railroads within a specified time to change all crossings, so that their tracks should pass under or over the public roads. This act was held constitutional by the U. S. Supreme Court, affirming the Supreme Court of

Connecticut, even as to existing crossings (*Railroad v. Bristol,* 151 U. S., 556), on the ground that grade crossings were a menace to public safety, and it was further held that the imposition of the entire expense of such change of grade upon the railroad company was not in violation of the Constitution of the United States. This has been cited and followed in *R. R. v. Kentucky,* 161 U. S., 696; *R. R. v. Defiance,* 167 U. S., 99; *Wheeler v. R. R.,* 178 U. S., 324; *R. R. v. McKeon,* 189 U. S., 509; *R. R. v. Wheeler,* 72 Conn., 488; *Norwood v. R. R.,* 161 Mass., 265; *Chicago v. Jackson,* 196 Ill., 502. A due regard for the safety of life and limb of our citizens who may have occasion to use the public roads, will doubtless cause the statutes in this respect, enacted in New York and Connecticut, to be followed and enacted in other States, or at least will cause enactments conferring power upon the Corporation Commission to compel railroad companies to abolish grade crossings, or erect gates provided with keeper, wherever the public safety and the volume of travel on the public roads may require it. In Germany, the wheel of the engine at a prescribed distance completes an electric circuit, and automatically rings a gong annunciator in the station. The same device applied to grade crossings would save thousands of lives annually in this country. If it were not cheaper for the railroads to pay the damages assessed for the lives and limbs destroyed at such crossings, their own pecuniary interests would require them to make such changes of grade at all public crossings, especially at those most used, without awaiting the legislation that shall require them to do so.

CONNOR, J., dissenting: Conceding the force of the view presented in the opinion of *Mr. Justice Hoke,* I think that, considered as a whole, every question of law applicable to the evidence was presented to the jury in the charge. His Honor said to the jury that "the traveler has the right to expect such warning to be given to him and he must look and

COOPER *v.* RAILROAD.

listen when approaching a crossing, and his failure to look and listen when such warning is given is negligence, and if such failure should cause his death, no recovery could be had for it." He then stated the proposition in a negative form; "but when the train does not give timely and reasonable warning of its approach, it is not contributory negligence in a traveler to go upon the track without looking and listening for the approach of the train, if he exercises that prudence and care which a prudent man would exercise under the circumstances," etc. I think that with this language construed in the light of other portions of the charge favorable to, and given in, the words of the defendant's prayer, the jury could not have been misled in regard to the relative duty of the plaintiff's intestate and the defendant. Upon this view and for the reasons and authorities cited in the opinion of the *Chief Justice,* I concur in the dissenting opinion that there is no reversible error. I do not care to express any opinion in regard to the weight of the testimony; nor do I think that the other questions discussed are presented by the record. They are not "matters of law or legal inference," and I do not care to express any opinion in regard to them.